Paul BRIGHTMAN, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 49S00–0010–CR–584.

Supreme Court of Indiana.

Nov. 15, 2001.

John F. Crawford, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Eileen Euzen, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

SHEPARD, Chief Justice.

Appellant Paul L. Brightman pled guilty to two counts of murder pursuant to a plea agreement. In exchange for his plea and agreement to testify in the trial of Sean Rich, the State dismissed Brightman's remaining charges (including two other mur-

der counts, nine felony counts, and a misdemeanor).

In this direct appeal, Brightman challenges the trial court's denial of his motion to withdraw his guilty plea, and the denial of his motion seeking to prevent the State from opposing his withdrawal.

## Facts and Procedural History

On January 28, 1998, the State charged Brightman with four counts of murder, one count of burglary, two counts of confinement, one count of arson, two counts of battery, one count of theft, and one count of cruelty to an animal. The court appointed public defender Mark Inman to represent him.

These charges resulted from Brightman's conduct on December 15, 1996, when he and Sean Rich broke into the Indianapolis home of Rev. C. Frederick Mathias and his wife Cleta to steal property. After entering the home, Brightman "kicked and killed the Mathias cat." (R. at 236–37.) As Brightman and Rich ransacked the home, the Mathiases arrived. Brightman struck each of the Mathiases in the head with a gun, went to the garage, found an ax and carried it back inside the home. Rich then killed the Mathiases by striking them both in the head with the ax. Rich started a fire to destroy the evidence and took a hundred dollars from the home. Brightman took a pocketknife.

Five days after Brightman's trial commenced, he pled guilty to two counts of murder. The plea agreement provided that Brightman would "testify truthfully at any and all proceedings in State v. Sean Rich," and that the State would forego prosecution of the other ten charges and recommend concurrent sentences of sixty-five years for the two murder counts. (R. at 171–72, 220, 223.)

Judge Gary Miller ascertained whether Brightman understood the effect of his plea by asking him several questions about the plea, Brightman's rights, and his satisfaction with his attorney's performance. He invited Brightman to ask for further explanation about anything he did not understand.

Brightman's answers revealed that he understood each charge and the range of potential sentences that could be imposed. He also acknowledged comprehending the rights that he waived by pleading guilty. He said the plea agreement had been read to him, that he had asked his lawyer questions about it, and understood it.

Brightman confirmed that the factual basis for the plea agreement presented by the State was substantially correct and that he wished to plead guilty. Judge Miller accepted Brightman's guilty plea, saying, "The Court finds that you are nineteen (19) years old, you do understand the charges that you are pleading guilty to, you understand the possible sentence that could be imposed upon conviction. Your plea of guilty is being made freely and voluntarily and a factual basis does exist for it." (R. at 238.) The court deferred sentencing until after Rich's trial.

Brightman testified at Rich's trial during February 1999. The jury found Rich guilty on four counts and hung on seven others. In December 1999, Brightman gave a deposition in which he recanted his prior deposition and trial testimony regarding his involvement or knowledge of the Mathias murders. Consequently, on February 29, 2000, the State moved to set aside Brightman's plea because he failed to testify truthfully in the Rich proceedings.

On the same day, Brightman, now represented by attorney Jack Crawford, moved to withdraw his guilty plea. He asserted then, as he does here, that he is innocent, that his guilty plea was involuntary, and that his counsel was ineffective. Brightman also sought to prevent the

State from opposing his motion to withdraw his plea, inasmuch as the State was itself seeking to set it aside.

The court denied the State's motion and Brightman's motions. Following the plea agreement, the court sentenced Brightman to concurrent sentences of sixty-five years.

## I. Withdrawing a Guilty Plea

Brightman first argues that the trial court abused its discretion when it denied his motion to withdraw his plea. He says his plea was involuntary[1] and his counsel was ineffective. In response, the State argues that Brightman cannot challenge the voluntariness of his plea because he pled guilty.

■ We first address the State's claim that Brightman is barred from presenting this issue on direct appeal under *Tumulty v. State*, 666 N.E.2d 394 (Ind.1996). In *Tumulty*, we held that once judgment is entered, a defendant may not subsequently challenge his guilty plea on direct appeal. *Id.* at 395–96. The correct avenue for such claims is post-conviction relief. *Id.* at 396.

The present case differs from *Tumulty* in a significant way. Brightman sought to withdraw his guilty plea prior to sentencing. In response, the trial court heard evidence on the motion, reviewed the claim, and rejected it.

■ Indiana Code § 35–35–1–4(b) governs motions to withdraw guilty pleas. After a defendant pleads guilty but before a sentence is imposed, a defendant may motion to withdraw a plea of guilty. *Id.* The

court must allow a defendant to withdraw a guilty plea if "necessary to correct a manifest injustice."[2] *Id.*

By contrast, the court must deny the motion if withdrawal of the plea would "substantially prejudice[ ]" the State.[3] *Id.* In all other cases, the court may grant the defendant's motion to withdraw a guilty plea "for any fair and just reason." *Id.*

■ A trial court's ruling on a motion to withdraw a guilty plea "arrives in this Court with a presumption in favor of the ruling." *Coomer v. State*, 652 N.E.2d 60, 62 (Ind.1995). We will reverse the trial court only for an abuse of discretion. *Id.* In determining whether a trial court has abused its discretion in denying a motion to withdraw a guilty plea, we examine the statements made by the defendant at his guilty plea hearing to decide whether his plea was offered "freely and knowingly." *Id.*

*Voluntariness of the Plea.* Judge Gary Miller began the plea hearing by questioning whether Brightman wanted to plead guilty, as his lawyer had indicated. Brightman responded affirmatively. The judge then explained that he was going to ask Brightman several questions about the plea agreement and his rights. The judge said, "If you don't understand the questions I ask, please stop me and we will go over them; okay?" R. at 224. Brightman again answered positively.

Further dialogue between the court and Brightman revealed that Brightman understood that he did not have to plead guilty to any of the State's charges and

---

1. Brightman contends that his plea was "involuntary because he felt 'trapped' and abandoned by his trial counsel." (Appellant's Br. at 12.) He also claims that his plea was not knowing or intelligent because he did not have any "meaningful interaction with his attorney prior to entering the plea." (*Id.*)

2. Brightman does not claim the existence of a manifest injustice.

3. The State does not assert that it relied on Brightman's guilty plea such that its withdrawal would have been substantially prejudicial.

had enough time to speak to a lawyer. (*Id.*) When questioned, Brightman explained that he had a ninth grade education, is able to read, but does not comprehend everything.[4] (R. at 225.) The judge then confirmed with Brightman's attorney that he had read the charges to his client. (*Id.*)

Judge Miller next read both murder counts contained in Brightman's plea agreement. (*Id.*) Brightman asserted that he thought the first murder count charged "felony murder and not the regular murder." (R. at 226.) Judge Miller clarified that the first count does charge felony murder and explained, "Felony murder occurs when during the commission of a felony someone is killed. (*Id.*) And that's the description of that charge; do you understand that charge?" (*Id.*) After conferring with his attorney, Brightman said he understood. (*Id.*)

Before discussing the possible penalty for each of the murder counts, the judge again asked Brightman if he understood his charges. (R. at 227.) Brightman responded, "Yes, sir." (*Id.*) The judge also explained that a guilty plea waives certain rights including his constitutional rights to a public and speedy trial by jury and to personally confront and cross-examine witnesses presented against him. (R. at 228–29.) The judge then asked Brightman, "And, finally do you understand by pleading guilty to these two (2) charges you are admitting you've committed the crimes of murder ... that I read to you a couple of minutes ago?" (R. at 229.) Brightman answered, "Yes, sir." (*Id.*)

Judge Miller next reviewed Brightman's plea agreement, which Brightman previously discussed with his attorney and his mother. He questioned whether Brightman had read the entire agreement before

signing it. Brightman replied, "It was read to me. I read most of it just so I understood it. If I had questions during it I asked [Inman]." R. at 231. The following exchange also occurred:

> THE COURT: Do you believe your plea of guilty to these two (2) charges is being made freely and voluntarily?
>
> DEFENDANT: I don't understand the question, sir.
>
> THE COURT: Well, has anybody forced you or threatened you to get you to plead guilty?
>
> DEFENDANT: No, sir.
>
> THE COURT: Did anybody promise you anything to get you to plead guilty other than what is contained in this written plea agreement?
>
> DEFENDANT: No, sir.
>
> THE COURT: Are you doing this on your own free will?
>
> DEFENDANT: Yes, sir.
>
> THE COURT: Are you satisfied with the services of Mr. Inman in this case?
>
> DEFENDANT: Yes, sir.
>
> THE COURT: Can you think of anything that he hasn't done for you that you think he should have done?
>
> DEFENDANT: Gag order but that's nothing.

(R. at 232–33.)

After the prosecutor read the factual basis for the plea, (R. at 233–37), the judge asked Brightman whether he heard what the prosecutor had said and whether the facts were substantially correct. (R. at 237.) Brightman answered each question by saying, "Yes, sir." (*Id.*) Brightman also confirmed that he "still wish[ed] to plead guilty" to both murder counts. (R. at 238.) The trial court accepted his guilty plea.

---

4. Brightman suffered from dyslexia. (R. at 331).

About seven months later Brightman moved to withdraw the plea.[5]

These hearing statements adequately demonstrate that Brightman voluntarily and knowingly pled guilty.

Before denying Brightman's withdrawal motion, Judge Miller considered Brightman's statements from the guilty plea hearing as well as his assertions at the hearing on his request to withdraw. The judge explained:

> I have had the opportunity to observe Mr. Brightman give a number of statements, the television interviews, the interviews with the Sheriff ... I saw his testimony in the Sean Rich trial. I heard him discuss his involvement at the guilty plea. I've also seen the deposition given afterwards in which he denies his involvement, as well as his testimony at [this] hearing. I find that ... his testimony in the matters before us today ... is not credible....

(R. at 354–55.) Having reviewed these same materials, we are satisfied that the trial court did not abuse its discretion in denying Brightman's request to withdraw his guilty plea.

■ *Effective Assistance of Counsel.* Brightman also contends his lawyer was ineffective within the meaning of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Brightman claims his lawyer would not render assistance because he believed Brightman was guilty, forced him to lie, and failed to adequately communicate with him throughout the course of representation.

■ To prevail on an ineffective assistance of counsel claim, the defendant must show both deficient performance and resulting prejudice. *Williams v. State,* 706 N.E.2d 149, 154 (Ind.1999). Deficient performance is performance that falls below an objective standard of reasonableness. *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052. Prejudice exists when a defendant shows "there is a reasonable probability [i.e., probability sufficient to undermine confidence in the outcome] that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052.

■ Counsel is presumed competent, and whether a lawyer performed reasonably under the circumstances is determined by examining the whole of the lawyer's work on a case. *Id.* at 690, 104 S.Ct. 2052. A defendant must offer strong and convincing evidence to overcome the presumption that counsel prepared and executed an effective defense. *Burris v. State,* 558 N.E.2d 1067, 1072 (Ind.1990), *cert. denied,* 516 U.S. 922, 116 S.Ct. 319, 133 L.Ed.2d 221 (1995).

Brightman first asserts that his counsel would not render him assistance because his counsel believed Brightman was guilty.[6] The record reveals that after Brightman made several incriminating statements, his attorney sought to sup-

---

**5.** The trial court accepted Brightman's plea on January 25, 1999. (R. at 221.) Brightman moved to withdraw his plea on September 6, 1999. (R. at 277, Def. Exh. A.)

**6.** The following exchange occurred during cross-examination of Brightman by the State:

Q: You indicated that when you pled guilty on January 25, 1999, you pled guilty because you were trapped. You indicated that Mr. Inman said he was never going to do anything to help you because you were guilty; is that correct?

A: Yes, ma'am.

Q: Your statement to this Court is that that was Mr. Inman's position from the very first time you ever met with him; is that correct?

A: Yes, ma'am.

(R. at 257–58.)

press them. After a suppression hearing, the court denied the motion, and Brightman's attorney prepared for trial. The record further reveals that Brightman's attorney participated in numerous pre-trial hearings, participated in voir dire, used several peremptory challenges to remove potential jurors, offered an opening statement at trial, and participated in five days of trial. Only after the State presented its evidence including the admission of the three taped confessions to television stations, numerous taped statements to the police, and the deposition of Brightman's girlfriend who stated he admitted to the crimes—did Brightman withdraw his not guilty plea and enter into a plea agreement with the State. Brightman has not presented sufficient evidence to overcome the presumption that counsel performed competently.

■ Brightman next claims that his counsel forced him to lie.[7] In a hearing on his motion to withdraw his guilty plea, Brightman asserted he was innocent and claimed his counsel told his mother, "He's going to have to take the plea bargain or he's going to get the rest of his life in prison. I'm not going to do anything for him." Brightman's attorney was appointed on January 29, 1998, and the two met for the first time on February 10, 1998. Before the appointment, Brightman had given three taped confessions to the police, and three videotaped confessions to local television reporters. Judge Miller was warranted in concluding that Brightman's attorney did not prompt Brightman to lie before ever meeting him.

Looking at the whole of counsel's performance, Brightman's lawyer had to confront the fact that his client had given over eight hours of inculpatory interviews on videotape, that Brightman had confessed to the murders during interviews to three television stations, and that the State had sixty witnesses on its list for trial. In the face of this significant evidence, Brightman's counsel negotiated an agreement that called for a plea to two of twelve felony charges, dismissal of the rest, and a sixty-five year concurrent sentence for the heinous murders of a minister and his wife.

We find the previously quoted remarks of Judge Miller, (R. at 354–55), in ruling on Brightman's motion to withdraw his guilty plea, very relevant. Judge Miller made clear that he found Brightman's repeated admissions of guilt credible and his later assertion of innocence incredible. With regard to Brightman's counsel's performance, he went on to say: "Mr. Inman's representation was way above the minimum that our Supreme Court, both at the state and federal levels, require for meeting the constitutional definition of effective legal assistance of counsel." (R. at 355–56.)

Brightman has not persuaded us that his counsel's performance fell below an objective standard of reasonableness. Accordingly, he cannot succeed on his claim that he received constitutionally deficient assistance of counsel.

## II. Judicial Estoppel

■ Brightman also appeals the trial court's denial of his motion to prevent the State's presentation of evidence in opposition to his motion to withdraw his plea.

7. The following dialogue occurred at the hearing:

Q: Okay. Are you telling the Court that you told both of those people, "My lawyer—I've told my lawyer I'm going to lie. I'm innocent, but I've told my lawyer I'm innocent and he says, 'You're guilty; I won't help and you've got to lie to the Court'"? Did you tell your mother and your minister that?
A: Yes, I did.
(R. at 263.)

(Appellant's Br. at 13.) Brightman says the State should be estopped because the State "sought the same remedy in its motion to set aside the plea." (*Id.*)

As the Court of Appeals correctly explained in *Shewmaker v. Etter*, 644 N.E.2d 922 (Ind.Ct.App.1994), *aff'd sub nom., Hammes v. Brumley*, 659 N.E.2d 1021 (Ind.1995), "[j]udicial estoppel prevents a party from assuming a position in a legal proceeding inconsistent with one previously asserted." *Id.* at 931. The doctrine seeks to "protect the integrity of the judicial process rather than to protect litigants from allegedly improper conduct by their adversaries." *Wabash Grain, Inc. v. Smith*, 700 N.E.2d 234, 238 (Ind.Ct. App.1998) (citing 31 C.J.S. *Estoppel and Waiver* § 139(b) (1996)).

The State sought to set aside Brightman's guilty plea based upon an assertion that Brightman "substantially breached the plea agreement made between him and the State." (R. at 194.) Essentially, the remedy the State sought for the alleged breach was a rescission of the agreement, "restoring the parties to their precontractual positions." Black's Law Dictionary 1308 (7th ed. 1999); (R. at 193–94). Brightman's precontractual position was that of a defendant having a plea of not guilty.

The State's opposition to Brightman's motion to withdraw his guilty plea addressed Brightman's challenge to the validity of the plea agreement. (R. at 348–54.) The State asserted that Brightman voluntarily entered the agreement and that it was factually based. (*Id.*)

The State's opposition to Brightman's motion to withdraw was not contrary the State's position with regard to its own motion to set aside the guilty plea. In fact, consistency required the State to oppose Brightman's motion in order to support its position that there was a valid agreement and Brightman breached it.

Moreover, even if the State's position was contrary to its previous one, judicial estoppel would apply only if the court had acted on the state's prior request. *See Shewmaker*, 644 N.E.2d at 931. At the time that the State sought to oppose Brightman's withdrawal motion, the court had not yet ruled on the State's motion to set aside the guilty plea. Therefore, the trial court properly denied Brightman's motion for estoppel.

### Conclusion

We affirm the judgment of the trial court.

DICKSON, SULLIVAN, BOEHM, and RUCKER, JJ., concur.