**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case**.



FILED

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**KRISTINA J. JACOBUCCI**
Newby Lewis Kaminski & Jones, LLP
LaPorte, Indiana

ATTORNEY FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**GARY R. ROM**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| KELLYLEE SEXTON,<br><br>    Appellant-Defendant,<br><br>      vs.<br><br>STATE OF INDIANA,<br><br>    Appellee-Plaintiff. | )<br>)<br>)<br>)<br>)   No. 46A05-1204-CR-204<br>)<br>)<br>)<br>)<br>) |

APPEAL FROM THE LAPORTE SUPERIOR COURT
The Honorable Kathleen B. Lang, Judge
Cause No. 46D01-1109-FA-375

**November 26, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BARNES, Judge**

**Case Summary**

Kellylee Sexton appeals his conviction and sentence for one count of Class B felony dealing in a controlled substance. We affirm.

**Issues**

Sexton raises three issues, which we combine and restate as the following:

      I.      whether the trial court properly denied his motion to withdraw his guilty plea; and

      II.     whether he was properly sentenced.

**Facts**

On September 30, 2011, the State charged Sexton with one count of Class A felony dealing in a controlled substance—hydrocodone—within 1000 feet of a daycare center. No detailed facts are contained in the record regarding this offense. Sexton asserted to the probation officer preparing the presentence report and testified at sentencing that his participation in the offense was minimal, i.e. that he provided directions to the house of the drug buyer and waited in the seller's car while the transaction occurred, and that he did not personally handle any of the drugs or money. The State did not refute Sexton's version of events.

At a pretrial hearing on February 16, 2012, the trial court informed the parties that they had until 4:00 p.m. on February 17, 2012, to enter into any plea agreement. On February 17, 2012, Sexton signed a plea agreement providing that he would plead guilty to Class B felony dealing in a controlled substance, with an executed sentencing cap of

2

twelve years and sentencing otherwise left to the trial court's discretion. At the change of plea hearing held on that same date, Sexton stated that although he had a history of mental illness, including attention deficit hyperactivity disorder ("ADHD"), no such illness prevented him from understanding the plea agreement. After thoroughly questioning Sexton personally regarding his understanding of the plea agreement, the trial court took the agreement under advisement and scheduled a sentencing hearing for March 16, 2012.

On March 13, 2012, Sexton filed a pro se motion to withdraw his guilty plea and to dismiss his public defender. At the outset of the March 16, 2012 hearing, the trial court denied both motions. Sexton then testified regarding a history of receiving medication and treatment for mental illness; the only reference to a specific mental illness diagnosis, however, was Sexton's mother's statement that he had ADHD. Sexton also testified regarding his difficult childhood that included not knowing his father and frequent stays in foster care due to his mother's drug addiction.

On March 22, 2012, the trial court sentenced Sexton to a term of twelve years, with one year suspended to probation. The court entered the following statement explaining its sentence:

> Defendant had a troubled childhood. After being removed from his mother's home he lived in a series of foster homes and residential institutions. He suffers from mental illness, although the exact diagnosis is not clear. He has taken medication for his mental health problems for most of his life. The crime committed by defendant was a drug offense. It did not cause or threaten serious harm to person or

3

property. Defendant has a one year old child and another child on the way. Defendant played a limited role in the commission of this crime. In addition, the defendant did plead guilty saving the time and expense of a trial. Finally, defendant is remorseful for his part in this drug transaction.

Defendant has a significant criminal history including Criminal Confinement, a crime of violence and Battery by Bodily Waste committed while the defendant was incarcerated. This is defendant's third felony conviction and by law, there is a mandatory minimum sentence of six (6) years. Defendant is aware of his mental health problems and the need for medication to treat his illness. He maintains that he has been unable to get the medication he needs since his release from prison. He also testified, however, that he simply stopped going to the local mental health provider. Although it is true defendant has significant mental health concerns, it does not obviate his responsibility for his actions.

App. pp. 36-37. Sexton now appeals.

## Analysis

### I. Motion to Withdraw Guilty Plea

We first address the trial court's denial of Sexton's motion to withdraw his guilty plea.[1] Indiana Code Section 35-35-1-4(b) governs motions to withdraw guilty pleas that are made after entry of the guilty plea but before sentencing, such as Sexton's motion. "The court must allow a defendant to withdraw a guilty plea if 'necessary to correct a manifest injustice.'" Brightman v. State, 758 N.E.2d 41, 44 (Ind. 2001) (quoting Ind. Code § 35-35-1-4(b)). Conversely, "the court must deny the motion if withdrawal of the plea would 'substantially prejudice[ ]' the State." Id. "In all other cases, the court may grant the defendant's motion to withdraw a guilty plea 'for any fair and just reason.'" Id.

---

[1] On appeal, Sexton does not challenge the trial court's denial of his motion to dismiss his public defender.

4

Examples of a "manifest injustice" that will require withdrawal of a guilty plea include a defendant being denied the effective assistance of counsel, the plea not being entered into or ratified by the defendant, the plea not being knowingly and voluntarily made, the prosecutor failing to abide by the terms of the plea agreement, or the plea and judgment of conviction being void or voidable. Jeffries v. State, 966 N.E.2d 773, 778 (Ind. Ct. App. 2012), trans. denied.

We presume that a trial court has correctly ruled on a motion to withdraw a guilty plea and will reverse its ruling only for an abuse of discretion. Brightman, 758 N.E.2d at 44. In determining whether a trial court has abused its discretion in denying a motion to withdraw a guilty plea based on a claim that the plea was not knowingly made, we examine the statements made by the defendant at his guilty plea hearing to decide whether his plea was offered "freely and knowingly." Id. We will not disturb the trial court's ruling if it was based on conflicting evidence. Turner v. State, 843 N.E.2d 937, 940-41 (Ind. Ct. App. 2006).

On appeal, Sexton contends in part that he was under inordinate pressure to plead guilty because of the trial court's February 17, 2012 deadline for the parties to reach a plea agreement. Sexton's motion to withdraw his guilty plea, however, made no mention of any such claim that he was pressured into pleading guilty because of the trial court's time limit for entering such a plea. Rather, the motion and argument by counsel focused solely upon whether Sexton understood the plea and/or whether his mental illness made it impossible for him to meaningfully enter the plea. It is well-settled that a party generally

5

cannot raise new issues for the first time on appeal. <u>Craig v. State</u>, 883 N.E.2d 218, 220 (Ind. Ct. App. 2008).

Regardless, even if we consider Sexton's argument regarding the deadline, we cannot say the trial court erred in denying permission to withdraw the guilty plea. The trial court conducted an in-depth plea colloquy directly with Sexton, including asking him whether he had been forced or induced into pleading guilty, which he denied, and whether the guilty plea was his free and voluntary act, which he confirmed. The trial court also discussed Sexton's mental health, and Sexton expressly denied that it affected his ability to understand the guilty plea proceedings. Finally, among other things the trial court asked Sexton to recite in his own words what he was pleading guilty to and what his sentence would be, and he responded that he was pleading guilty to Class B felony dealing in a schedule II controlled substance and that he could argue sentencing up to a cap of twelve years. The transcript does not reflect any confusion on Sexton's part regarding the guilty plea or that he was improperly pressured into entering it. On its face, the plea colloquy establishes that Sexton's guilty plea was a free, knowing, and voluntary act. As for Sexton's demeanor during the colloquy, that was exclusively a matter for the trial court to judge. We cannot conclude that withdrawal of Sexton's guilty plea was necessary to correct a manifest injustice or that there was a fair and just reason supporting such a withdrawal.

*II. Sentence*

Next, we address Sexton's arguments regarding his sentence. We engage in a four-step process when evaluating a sentence under the "advisory" sentencing scheme. Anglemyer v. State, 868 N.E.2d 482, 491 (Ind. 2007). First, the trial court must issue a sentencing statement that includes "reasonably detailed reasons or circumstances for imposing a particular sentence." Id. Second, the reasons or omission of reasons given for choosing a sentence are reviewable on appeal for an abuse of discretion. Id. Third, the weight given to those reasons, i.e. to particular aggravators or mitigators, is not subject to appellate review. Id. Fourth, the merits of a particular sentence are reviewable on appeal for appropriateness under Indiana Appellate Rule 7(B). Id. Even if a trial court abuses its discretion by not issuing a reasonably detailed sentencing statement or in its findings or non-findings of aggravators and mitigators, we may choose to review the appropriateness of a sentence under Rule 7(B) instead of remanding to the trial court. See Windhorst v. State, 868 N.E.2d 504, 507 (Ind. 2007).

Sexton first argues that the trial court abused its discretion in its finding of mitigators. Specifically, he claims the trial court improperly failed to assign mitigating weight to his history of mental illness, his difficult childhood, his lesser role in the commission of the offense, and the purported fact that he was a "follower" in the commission of the offense. However, the trial court expressly stated that it was recognizing Sexton's mental illness history, his difficult childhood, and his limited role in the commission of the offense. Moreover, although Sexton argues for separate mitigating weight to be given to the purported fact that he was a "follower," we believe this falls

7

under the ambit of Sexton having played a limited role in the commission of the offense. Thus, Sexton's argument amounts to a request that we re-evaluate the weight the trial court gave to these mitigating circumstances. Under Anglemyer, we cannot do so. There is no abuse of discretion in the trial court's sentencing statement.

Sexton also argues that his sentence is inappropriate under Rule 7(B) in light of the nature of the offense and his character. Although Rule 7(B) does not require us to be "extremely" deferential to a trial court's sentencing decision, we still must give due consideration to that decision. Rutherford v. State, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007). We also understand and recognize the unique perspective a trial court brings to its sentencing decisions. Id. "Additionally, a defendant bears the burden of persuading the appellate court that his or her sentence is inappropriate." Id.

The principal role of Rule 7(B) review "should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." Cardwell v. State, 895 N.E.2d 1219, 1225 (Ind. 2008). We "should focus on the forest—the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count." Id. Whether a sentence is inappropriate ultimately turns on the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case. Id. at 1224. When reviewing the appropriateness of a sentence under Rule 7(B), we may consider all aspects of the penal consequences imposed by the trial court in

8

sentencing the defendant, including whether a portion of the sentence was suspended. Davidson v. State, 926 N.E.2d 1023, 1025 (Ind. 2010).

Regarding the nature of the offense, in the absence of any evidence or argument by the State to the contrary we accept Sexton's contention that he played a relatively minor role in the sale of hydrocodone. Additionally, there is no evidence that this transaction was anything other than a one-time "routine" illegal drug sale.

Turning to Sexton's character, the present offense was his third adult felony conviction. He was convicted of Class B felony criminal confinement in 2002, when he was nineteen. In 2004, while incarcerated, Sexton was convicted of Class D felony battery by bodily waste upon a law enforcement officer. In May 2011, Sexton agreed to be placed on pretrial diversion for one year for one count of Class D felony theft and one count of Class B misdemeanor harassment; he was still under the diversion program when he committed the present offense. In sum, since becoming an adult Sexton has had nearly constant interaction with the criminal justice system, including while he was incarcerated for his first felony conviction. This reflects very poorly upon his character.

Sexton nonetheless argues that his mental health issues justify a reduction in his sentence. Factors that may be considered in determining the weight to be given mental illness in sentencing include: "(1) the extent of the defendant's inability to control his or her behavior due to the disorder or impairment; (2) overall limitations on functioning; (3) the duration of the mental illness; and (4) the extent of any nexus between the disorder or

9

impairment and the commission of the crime." <u>Washington v. State</u>, 940 N.E.2d 1220, 1223 (Ind. Ct. App. 2011), <u>trans. denied</u>.

Here, although Sexton testified that he suffers from a longstanding mental illness and has taken various medications for it, the only mention of what Sexton specifically suffers from was by his mother, who said that Sexton has ADHD. There was no expert testimony nor any medical records documenting the full extent of Sexton's mental illness, nor its impact on his overall functioning. As far as any nexus between Sexton's mental illness and the present offense, there was only the non-medical expert testimony of his brother that when Sexton was not on his medication, he tended to do what others told him to do. We cannot conclude that this vague, undocumented evidence of Sexton's mental health requires a reduction in his sentence.

Similarly, Sexton argues that we ought to find his sentence to be inappropriate in light of the evidence he presented of having had a difficult childhood, as exemplified in part by his dysfunctional family situation. Indiana courts, however, have consistently held that evidence of a difficult childhood and/or growing up in a dysfunctional family situation carries little mitigating weight in sentencing. <u>See</u> <u>Timberlake v. State</u>,753 N.E.2d 591, 609-10 (Ind. 2001) (quoting <u>Coleman v. State</u>, 741 N.E.2d 697, 700 (Ind. 2000), <u>cert. denied</u>), <u>cert. denied</u>.

We do note that Sexton pled guilty, which often reflects positively upon a defendant's character for purposes of sentencing and Rule 7(B) review. <u>See</u> <u>Cotto v. State</u>, 829 N.E.2d 520, 526 (Ind. 2005). However, the importance of a guilty plea varies

from case to case and may not be considered significantly mitigating if it does not demonstrate the defendant's acceptance of responsibility or if the defendant received a substantial benefit in return for the plea. Anglemyer v. State, 875 N.E.2d 218, 221 (Ind. 2007). Here, Sexton received a substantial benefit from the plea: the State abandoned its attempt to convict him of Class A felony dealing in a controlled substance in exchange for his plea to a Class B felony, and that plea capped his total executed sentence at twelve years, well below the twenty-year maximum for a Class B felony.

In sum, although the crime Sexton helped commit was not especially heinous, his character as reflected by his criminal history justifies the sentence imposed by the trial court. Nothing in the record has convinced us that that sentence is inappropriate.

## Conclusion

The trial court did not err in denying Sexton permission to withdraw his guilty plea and it properly sentenced him. We affirm.

Affirmed.

VAIDIK, J., and MATHIAS, J., concur.

11