## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**
Nov 09 2015, 5:49 am
CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Jeffrey E. Stratman
Aurora, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Katherine Modesitt Cooper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Donald G. Huntington,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | November 9, 2015<br><br>Court of Appeals Case No.<br>15A05-1504-CR-143<br><br>Appeal from the Dearborn Circuit Court<br><br>The Honorable James D. Humphrey, Judge<br><br>Trial Court Cause No.<br>15C01-0911-FB-29 |

**Kirsch, Judge.**

[1] After pleading guilty to Class B felony possession of a firearm by a serious violent felon and being an habitual offender, Donald G. Huntington now

appeals and raises one issue: whether the trial court abused its discretion when it denied his oral request at the sentencing hearing to withdraw his guilty plea.

[2] We affirm.

## Facts and Procedural History

[3] On November 20, 2009, the State charged Huntington with Count I, Class C felony burglary; Count II, Class D felony theft; Count III, Class D felony criminal mischief; Count IV, Class B felony possession of a firearm by a serious violent felon, and with being an habitual offender. The charges stemmed from a burglary at a car wash located in Dearborn County on October 29, 2008. The initial hearing was delayed because of Huntington's involvement in criminal proceedings in Ripley County, but was eventually held on January 1, 2014. Huntington and his counsel appeared at the February 13, 2015 final pretrial conference. On that date, Huntington and the State entered into a negotiated plea agreement ("Agreement"), under which Huntington agreed to plead guilty to Count IV and the habitual offender enhancement, and the State agreed to dismiss the remaining charges. The Agreement provided for a maximum aggregate sentence of thirty years with ten years suspended.

[4] At the guilty plea hearing, the trial court had the following dialogue with Huntington:

> Q: Sir, I need to know have you ever been treated for any mental illness?

A: Yes, I have.

Q: What is the nature of that, sir?

A: I'm not on medication no more.

Q: Okay. What is your diagnosis?

A: Schizophrenic.

Q: OK. And, are you still suffering from that condition?

A: I'm not . . . I'm no longer on medication.

Q: Okay. So does this condition [a]ffect your ability to understand what we're doing here today?

A: No, sir.

*Tr*. at 4-5. Then the trial court asked defense counsel:

Q: [Counsel], does this raise any possible defenses or [a]ffect Mr. Huntington's ability to proceed here today?

A: Not to my knowledge, Judge.

*Id*. at 5.

[5] Thereafter, the trial court, among other things, advised Huntington of his constitutional rights, informed him of the State's burden of proof if he went to trial, and explained that he was giving up the right to appeal his conviction by

pleading guilty. The trial court confirmed that Huntington was represented by counsel and that he was satisfied with his counsel's representation. The trial court reviewed the charges, and confirmed that Huntington understood the charges and the potential penalties he would face if he went to trial. The trial court reviewed the specific terms of the plea agreement and established that Huntington had not received anything in value in exchange for his plea and that it was made freely. Huntington agreed to the factual basis for the Class B felony unlawful possession of a firearm charge, including that which caused him to be classified a serious violent offender, and he agreed to the habitual offender enhancement. Huntington acknowledged that it was his decision to plead guilty.

[6] After determining that Huntington's plea was knowingly and freely made, and that a factual basis existed for the plea, the trial court took particular note of the mental health issue and stated,

> I'm also going to note based upon Mr. Huntington's comments about his . . . appears to be a previous mental condition, that Mr. Huntington appears to have fully understood the discussion we've had here today, and appears to be . . . [] this has played no part . . . and again, affecting his ability to understand this . . . these proceedings and enter this plea.

*Tr.* at 18 (ellipses in original, alteration added in brackets). Huntington's counsel then stated, "That's been my perception as well in my dealing with Mr. Huntington, Judge[,]" to which the State followed up with, "And, I would agree as well, Your Honor." *Id.* The trial court took the matter under

advisement, ordered preparation of a presentence investigation report, and scheduled the matter for a sentencing hearing on March 13, 2015.

[7] At the beginning of the sentencing hearing, Huntington's counsel orally made a motion to withdraw Huntington's guilty plea. Huntington was sworn in as a witness, and his counsel examined him, during which Huntington testified to the basis of his desire to withdraw the guilty plea, initially stating that "nobody ever had me evaluated[.]" *Tr.* at 22. He continued, "Plus, I never did have the full discovery of my case" prior to the guilty plea, asserting that his attorney "kept it all hid from me" and was "ineffective." *Id.* Huntington stated that he had attempted suicide and that his "parole lady" had mistreated him, and that he had been through treatments "since I've been down at Pendleton." *Id.* at 22-23. His counsel inquired further about Huntington's reference to psychological treatment, and Huntington indicated he was treated in 2009 and for some period thereafter, but that he was taken off medication "a little over a year ago," while he was housed "at Miami[.]"[1] *Id.* at 25. His counsel asked him,

> Q: So, being taken off the medication, did that . . . does that affect your ability to read?
>
> A: No, no, it don't affect my ability to read.
>
> Q: Okay. Does it affect your ability to understand this Negotiated Plea Agreement?

---

[1] It appears Huntington is referring to the Miami Correctional Facility.

A: No, but I still need treatment, I'm going right back through the same mess again.

*Id.* When Huntington's counsel asked Huntington to explain to the trial court why it should allow him "to get out of" the Agreement, Huntington said, "All Right. Your Honor, I would like to go ahead and excuse him for ineffective Counsel[.]" *Id.* at 26. The trial court ended the testimony, opining, "I think Mr. Huntington just wants to get out of his plea[.]" *Id.* It thereafter denied Huntington's motion, and Huntington now appeals.

## Discussion and Decision

Indiana Code section 35-35-1-4(b) governs motions to withdraw guilty pleas. It provides that a defendant may move to withdraw a plea of guilty after pleading guilty but before a sentence is imposed. Ind. Code § 35-35-1-4(b). Our courts have explained:

> The court must allow a defendant to withdraw a guilty plea if "necessary to correct a manifest injustice." By contrast, the court must deny the motion if withdrawal of the plea would "substantially prejudice[ ]" the State. In all other cases, the court may grant the defendant's motion to withdraw a guilty plea "for any fair and just reason."

*Peel v. State*, 951 N.E.2d 269, 271 (Ind. Ct. App. 2011) (internal citations omitted) (quoting *Brightman v. State*, 758 N.E.2d 41, 44 (Ind. 2001)). Indiana Code section 35-35-1-4(b) requires that the motion "shall be in writing and verified." A defendant has the burden to establish his grounds for relief by a preponderance of the evidence. Ind. Code § 35-35-1-4(e).

[9]     A trial court's ruling on a motion to withdraw a guilty plea "arrives in this Court with a presumption in favor of the ruling." *Brightman*, 758 N.E.2d at 44 (citing *Coomer v. State*, 652 N.E.2d 60, 62 (Ind. 1995)); *McGraw v. State*, 938 N.E.2d 1218, 1220 (Ind. Ct. App. 2010) (trial court's ruling on motion to withdraw guilty plea is presumed to be correct), *trans. denied*. The trial court's ruling on the motion "shall be reviewable on appeal only for an abuse of discretion." Ind. Code § 35-35-1-4(b). We will not disturb the trial court's ruling where it was based on conflicting evidence. *Smallwood v. State*, 773 N.E.2d 259, 264 (Ind. 2002). In determining whether a trial court has abused its discretion in denying a motion to withdraw a guilty plea, we examine the statements made by the defendant at his guilty plea hearing to decide whether his plea was offered "freely and knowingly." *Brightman*, 758 N.E.2d at 44.

[10]    As an initial matter, we note that Indiana Code section 35-35-1-4(b) required Huntington to tender a written and verified motion that presented specific facts to support the withdrawal of the guilty plea. He did not do so. Rather, Huntington orally moved for withdrawal of his guilty plea at the beginning of the sentencing hearing. By failing to submit a written, verified motion, he has waived the issue of whether the trial court wrongfully denied his request. *See Peel*, 951 N.E.2d at 272 (citing *Carter v. State*, 739 N.E.2d 126, 128 n.3 (Ind. 2000) ("A defendant's failure to submit a verified, written motion to withdraw a guilty plea generally results in waiver of the issue of wrongful denial of the request.")).

[11] Waiver notwithstanding, we find no trial court error. Here, Huntington "does not argue that manifest injustice [] occurred[,]" such that the trial court would have been required under the statute to grant his motion. *Appellant's Br.* at 5. Rather, Huntington argues that his "well-established" mental health condition "was fair and just reason for the trial court to allow [him] to withdraw his guilty plea" and that the trial court abused its discretion when it did not permit him to do so.[2] *Id.* at 6. However, upon review, we discern an exercise of discretion, not an abuse of it.

[12] Here, at the commencement of the sentencing hearing, after Huntington moved for withdrawal of his plea, the trial court received testimony from Huntington, which included that he had not been evaluated psychologically, had not received full discovery prior to pleading guilty, and had previously undergone psychological treatment in 2009 and for some period thereafter. Huntington testified that he had been taken off medications "a little over a year ago" while at the Miami Correctional Facility. *Tr.* at 25. He expressly testified that being taken off medication did not affect his ability to understand the plea agreement. *Id.*

---

[2] Huntington suggests, "At a minimum, the [trial] court should have allowed a continuance of the sentencing hearing to investigate further the state of [Huntington's] mental capacity." *Appellant's Br.* at 3. According to the record before us, no party requested a continuance of the hearing. On appeal, Huntington provides no additional argument or authority for the proposition that the trial court should have *sua sponte* ordered a continuance or that it committed reversible error by failing to do so. Huntington has thus waived, and we do not further address, the argument. Ind. Appellate Rule 46(A)(8); *Jackson v. State*, 758 N.E.2d 1030, 1037 (Ind. Ct. App. 2001) (failure to cite appropriate authority results in waiver).

[13] In order to determine whether a plea was freely and voluntarily made, we also review the statements made by a defendant during a guilty plea hearing. *McGraw*, 938 N.E.2d at 1220. Here, at the guilty plea hearing, Huntington stated that previously he had been diagnosed "schizophrenic" and treated for that condition. *Tr.* at 5. The trial court asked Huntington if he was still suffering from that condition, to which Huntington replied, "I'm not . . . I'm no longer on medication." *Id*. The trial court specifically questioned Huntington, "Does this condition [a]ffect your ability to understand what we are doing here today?" and Huntington responded, "No, sir." *Id*. Huntington gave lucid and appropriate responses to each question posed to him. Before the conclusion of the proceedings, the trial court recognized that Huntington's testimony reflected a previous mental condition, but continued that "Huntington appears to have fully understood the discussion we've had here today[.]" *Id*. at 18. Thereafter, Huntington's counsel and the prosecutor each affirmatively indicated that he did not perceive any issues with regard to Huntington's ability to understand the proceedings and enter the guilty plea. Given the record before us, we cannot say that the trial court's decision to deny Huntington's oral motion to withdraw his guilty plea was an abuse of discretion.[3]

---

[3] In his Reply Brief, Huntington continues to argue that it was an abuse of discretion to deny his motion, but alternatively argues that "manifest injustice" existed under the circumstances because his trial counsel was not rendering effective assistance, such that he "was left to argue his motion in a pro se manner." *Reply Br.* at 4. He claims that, because his mental capacity was at issue, it constituted manifest injustice "to expect [him] to properly file a written and pro se request to withdraw his guilty plea, or to expect him to communicate that desire effectively to his appointed counsel." *Id*. at 2. Therefore, he claims, the trial court was required under Indiana Code section 35-35-1-4(b) to grant his motion. Huntington acknowledges that "[he] did not raise an issue of manifest injustice in his original brief[.]" *Id*. at 5. Because Huntington failed to raise the issue in his

Affirmed.

Najam, J., and Barnes, J. concur.

---



principal appellate brief, the issue is waived. Ind. Appellate Rule 46(C) ("No new issues shall be raised in the reply brief."); *Sisson v. State*, 985 N.E.2d 1, n.8 (Ind. Ct. App. 2012) (party cannot raise argument for first time in reply brief), *trans. denied*. Regardless of waiver, we find that the facts before us do not demonstrate that withdrawal of Huntington's guilty plea was necessary to correct a manifest injustice.