**Omond J. SMITH, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 48S00–0009–CR–550.

Supreme Court of Indiana.

April 2, 2002.

David W. Stone, IV, Anderson, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Grant H. Carlton, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

BOEHM, Justice.

Omond Smith was convicted of murder, possession of a handgun without a permit, and possession of a handgun by a convicted felon. He was adjudged a habitual offender and sentenced to a total of 103 years imprisonment. In this direct appeal, Smith contends the State was judicially estopped from seeking an instruction on accomplice liability because it agreed to a guilty plea from another defendant on a theory of the facts that was allegedly inconsistent with Smith's being an accomplice to the killing. He also contends he did not receive effective assistance of counsel. We hold that judicial estoppel based on an inconsistent position in an earlier case does not apply against the State in a criminal case where the parties to the two actions are not the same.

## Factual and Procedural Background

Smith was charged with the murder of David Riggs. Smith's first trial resulted in a conviction that was reversed by this Court. *Smith v. State*, 721 N.E.2d 213 (Ind.1999). After the first trial, Tommy Lampley pleaded guilty to the Class C felony of Assisting a Criminal and became the principal witness in Smith's retrial. The State proceeded on the theory that Smith killed Riggs, but also tendered a jury instruction on accomplice liability, apparently believing the jury might find that Lampley had killed Riggs and Smith had aided Lampley. The only evidence supporting this theory was the testimony of

Randall Byrd, who testified that Lampley had told him that Lampley killed Riggs, but would say that Smith was the killer. Although not evidence, during Lampley's testimony Smith accused Lampley of the killing in an outburst before the jury.

The following quite different version of these events is derived largely from Lampley's testimony. Some time after midnight on January 11, 1997, Lampley was walking to a Village Pantry store in Anderson, Indiana, when Smith drove up in a black truck and offered Lampley a ride. Lampley accepted, and Smith drove them to Smith's house at 2223 Park Avenue. According to Lampley, Lampley remained in the truck as Smith entered the house. After waiting several minutes, Lampley got out of the truck and stuck his head into the house, where he observed Riggs sitting on the couch and Smith walking around the living room, apparently looking for something. Smith then requested and received Riggs' permission to search Riggs, and discovered a bag of crack cocaine in Riggs' pocket. Smith accused Riggs of stealing the cocaine, a scuffle ensued, and Smith retrieved a brown suede bag. Lampley testified he saw the handle of a gun sticking out of the bag, backed away from the house, and began walking toward nearby railroad tracks.

Lampley soon heard footsteps behind him, turned around, and saw Riggs running and then hiding behind a bush. Smith soon pulled up in the black truck, pointed the headlights at the bush, and exited the truck, gun in hand. Lampley continued to walk away, and soon heard gunshots. After taking cover behind a dumpster for fifteen to twenty minutes, Lampley returned to find Riggs lying in the street, covered with blood. Riggs had been shot four times and died as a result of the wounds.

In the retrial, Smith was convicted of murder, possession of a handgun without a permit, and possession of a handgun by a convicted felon. This appeal followed.

## I. Instruction on Accomplice Liability

The State tendered and received an accomplice liability instruction that "[a] person who knowingly or intentionally aids, induces or causes another person to commit an offense, commits that offense even if the other person has not been prosecuted for the offense, has not been convicted for the offense or has been acquitted of the offense." Smith contends that because the State accepted Lampley's guilty plea under Indiana Code section 35–44–3–2, which has been interpreted to apply to people who did not actively participate in the crime itself, but who assisted a criminal after he or she committed a crime,[1] the doctrine of judicial estoppel precluded an instruction in Smith's trial that was based on Smith's aiding Lampley in the killing.

Smith correctly points out that judicial estoppel has been held to prevent a party from asserting a position in a legal proceeding inconsistent with one previously asserted. *Wabash Grain, Inc. v. Smith,* 700 N.E.2d 234, 237 (Ind.Ct.App.1998), *trans. denied.* However, judicial estoppel in this state has been applied only in civil cases, and neither this Court nor the Court of Appeals has applied the doctrine against the State in a criminal case. A few criminal cases have noted the claim that judicial estoppel precluded the State from asserting a particular contention, but in each case the elements of estoppel were found wanting. As a result, none of these decisions considered whether the doctrine may be invoked against the State in a criminal

---

1. *See Hauk v. State,* 729 N.E.2d 994, 999 (Ind.2000).

case.[2] Indeed, although a handful of jurisdictions outside Indiana theoretically allow judicial estoppel against the government in criminal cases, we are aware of no case in which the doctrine has been successfully invoked against the government. In *State v. Towery*, 186 Ariz. 168, 920 P.2d 290, 304 (.1996), cited by many courts as the leading case allowing judicial estoppel against the State in a criminal proceeding, the court conditioned application of judicial estoppel on (1) identity of parties; (2) identity of question involved; and (3) success in the prior judicial proceeding by the party asserting the inconsistent position.[3] Ultimately, the court found no judicial estoppel because the third condition was not met. *Id.* at 306. As described by the Arizona Supreme Court, the doctrine would not help Smith because of the lack of identity of parties in both this case and Lampley's prosecution. *See also Hoover v. State*, 552 So.2d 834, 839 (Miss.1989) (judicial estoppel not applicable against the state in criminal cases where the parties are not identical). In *People v. Gayfield*, 261 Ill.App.3d 379, 199 Ill.Dec. 123, 633 N.E.2d 919, 925 (1994), the court, without discussion of whether judicial estoppel should apply in a criminal proceeding, rejected the doctrine on the facts of the case, concluding that "there was no certain position taken at one proceeding that was contrary to another proceeding." *Accord Commonwealth v. Lam*, 453 Pa.Super. 497, 684 A.2d 153, 164 (1996).

Federal courts have been even less receptive to the application of judicial estoppel against the government in criminal proceedings. *See United States v. Kattar*, 840 F.2d 118, 129–30 n. 7 (1st Cir.1988) (Judicial estoppel is an "obscure doctrine" that has never been applied against the government in a criminal proceeding.); *Nichols v. Scott*, 69 F.3d 1255, 1272 (5th Cir.1995) (judicial estoppel not constitutionally mandated and has never been applied against the government in a criminal proceeding); *United States v. Garcia*, No. 99–10262, 2000 WL 286285, at *1, 2000 U.S.App. LEXIS 4178, at *4 (9th Cir. Mar. 16, 2000) ("Given the unique status of the government as a litigant, and the great degree of latitude that the government enjoys in prosecuting the law and striking plea bargains, we are simply not persuaded that this is a case in which to [apply judicial estoppel].") (citations omitted).

■■■ We think the purpose of judicial estoppel is not well served by applying it against the government in criminal cases. As the *Garcia* court noted, the government possesses unique status as a litigant and enjoys a great degree of latitude in prosecuting the law and striking plea bargains. The purpose of judicial estoppel is to protect the integrity of the judicial process rather than to protect litigants from allegedly improper conduct by their adversaries. *Wabash Grain*, 700 N.E.2d at 238. It does so by preventing a party and its counsel from playing fast and loose with the courts. *GEICO Ins. Co. v. Rowell*, 705

---

2. *See, e.g., Brightman v. State*, 758 N.E.2d 41, 47–48 (Ind.2001) (no judicial estoppel on facts of case, since State's two positions did not contradict one another); *Redington v. State*, 678 N.E.2d 114, 117 n. 5 (Ind.Ct.App. 1997), *trans. denied* (same); *Dell v. City of Tipton*, 618 N.E.2d 1338, 1342 (Ind.Ct.App. 1993), *trans. denied* (same).

3. The court reasoned that judicial estoppel should be "no less applicable in a criminal

than in a civil trial" because "[a]ny other rule would permit absurd results." *Id.* The only factual scenario given to bolster this argument, however, was the repeated use of the same defendant's admission that he robbed "the convenience store" to obtain repeated convictions for robberies of different stores. Whatever the persuasive force of this example, it applies only to multiple trials of the same defendant.

N.E.2d 476, 481 (Ind.Ct.App.1999). We do not believe the acceptance of a plea bargain from Lampley on one theory of the case and the prosecution of Smith in a separate action on an alternate theory can be construed as "playing fast and loose" with the courts.

■ Perhaps more importantly, if, after one defendant is convicted, additional evidence becomes available suggesting the guilt of a second, but on an inconsistent theory, some type of relief may or may not be afforded the first defendant under existing doctrines of law. Immunization of the second defendant due to a mistake in the prosecution of the first, however, is not the appropriate remedy. Accordingly, we hold that where the parties to the criminal proceedings in question are not identical, judicial estoppel does not apply against the State. Here the alleged inconsistency is between the State's position in this case and its "prevailing" by obtaining a guilty plea on an inconsistent theory in Lampley's. We leave for another day the issue of whether judicial estoppel can be applied against the State in a criminal case if the parties in the prior suit are the same, i.e., in a subsequent prosecution of the same defendant.

■ Smith next contends that even if the instruction was not precluded by judicial estoppel, it was fatally incomplete and misleading. Smith argues that the instruction given, which tracks Indiana Code section 35–41–2–4, should have been supplemented by the Indiana pattern jury instruction for accomplice liability, which adds the following:

To convict the defendant, the State must have proved each of the following elements:

1. [name other person] committed the crime of [name crime aided, induced or caused] in that [name other person] [insert elements of the crime alleged to have been aided, induced or caused]

and the defendant

2. knowingly or intentionally

3. aided [name other person] in committing the [name crime]

[or]

induced [name other person] to commit the [name crime]

[or]

caused [name other person] to commit the [name crime].

If the State failed to prove each of these elements beyond a reasonable doubt, you should find the defendant not guilty.

If the State did prove each of these elements beyond a reasonable doubt, you should find the defendant guilty of [name crime], a Class [insert class of crime] [misdemeanor] [felony].

1 Ind. Pattern Jury Instructions (Criminal) 2.11 (2d ed.1991). However, Smith did not tender this instruction at trial. Furthermore, although Smith objected at trial to the relevance of the State's tendered instruction, he did not object that the instruction was incomplete or misleading. Accordingly, the claim of error is waived. *Luna v. State*, 758 N.E.2d 515, 518 (Ind. 2001). Although Smith contends this alleged error was fundamental, and thus not susceptible to waiver, we believe that under these facts the failure to add the pattern jury instruction does not begin to rise to the level of fundamental error, if indeed it was error at all.

■ Finally, at trial Smith's objection to the accomplice liability instruction was that it was irrelevant because the evidence, if credited, established Smith, not someone else, to be the killer. As noted earlier, Byrd testified that Lampley had admitted to being the killer. The trial

judge raised the issue of whether this testimony was admissible as substantive evidence, given that it appears to be hearsay.[4] After an extended discussion over logistical and scheduling issues raised by recalling Lampley, the parties agreed to permit Byrd to testify and stipulated that Lampley would deny having made the confession. There appears to be no direct evidence of Smith's aiding Lampley. Nevertheless, jury instructions are within the sound discretion of the trial court and will only be reversed on a showing of abuse of that discretion. *Young v. State,* 696 N.E.2d 386, 389 (Ind.1998). Given the admission of Byrd's testimony, we cannot say the instruction was an abuse of the trial court's discretion to find it at least marginally supported by the evidence.

## II. Ineffective Assistance of Counsel

 Smith contends he received ineffective assistance of counsel because his counsel failed to object to (1) comments about Smith's previous trial for this murder, (2) cross-examination of defense witnesses regarding their failure to give information to the police, (3) testimony concerning fears of witnesses, and (4) cross-examination for which the prosecutor had not established a factual predicate. Ineffective assistance of counsel claims are governed by the two-part test announced in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Perez v. State,* 748 N.E.2d 853, 854 (Ind.2001). First, the defendant must show that counsel's performance was deficient. *Id.* This requires a showing that counsel's representation fell below an objective standard of reasonableness and that the errors were so serious that they resulted in a denial of the right to counsel guaranteed the defendant by the Sixth Amendment. *Id.* Second, the defendant must show that the deficient performance prejudiced the defense. *Id.* To establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

 Counsel is afforded considerable discretion in choosing strategy and tactics, and we will accord those decisions deference. *Id.* A strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* We recognize that even the finest, most experienced criminal defense attorneys may not agree on the ideal strategy or the most effective way to represent a client. *Id.* Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective. *Id.* When a claim for ineffective assistance of counsel is based on counsel's failure to object, the defendant also must show that a proper objection would have been sustained. *Willsey v. State,* 698 N.E.2d 784, 794 (Ind.1998).

Smith notes that over the course of his six-day trial, witnesses on seven occasions made references to the first trial.[5] Smith

---

4. Although against Lampley's penal interest, it was not admissible under Indiana Rule of Evidence 804 because Lampley—the declarant—was not "unavailable." Lampley had not denied making the statement, so it was not admissible as impeachment.

5. During redirect examination of Lampley, the following exchange occurred:
 Q. Then you testified in front of another jury didn't you?
 A. Yes I did.
 Q. Told them what happened didn't you?
 A. Yes.

contends the cumulative effect of these references was to inform the jury that Smith had already been convicted once of the murder of Riggs. Smith argues this knowledge may have lulled the jury into relying on the decision of the prior jury, or into thinking that even if they made a mistake there could be another reversal on appeal. He argues that his counsel was ineffective for failing to object to these references.

■ Most of the references were to the fact that the witnesses had testified previously about the murder, without reference to the identity of the individual at whose trial the witnesses testified. Even if the jury assumed Smith was a defendant in the first trial, it does not follow that the jury knew whether that former trial was on the same charge or whether there was a conviction. *Bradberry v. State*, 266 Ind. 530, 538, 364 N.E.2d 1183, 1187–88 (1977)

(citing *Chaffin v. Stynchcombe*, 412 U.S. 17, 26–27, 93 S.Ct. 1977, 36 L.Ed.2d 714 (1973)). An objection might have led to an admonishment that the jury should not draw any inference as to who was tried in the earlier trial, or what its outcome was. But an objection would also have highlighted otherwise scattered and oblique references to the prior trial. This sort of tactical call is not the stuff of an ineffective assistance claim.

■ Smith next contends his counsel should have objected to cross-examination of two defense witnesses on their failure to give police information about Riggs' murder. Defense witness Byrd testified that while Lampley and Byrd were incarcerated in the Madison County jail, Lampley told Byrd that Lampley had killed Riggs and planned to pin the blame on Smith. On cross-examination, Byrd admitted that he never volunteered this information to

Madison County police officer Jerry Bailey testified about a jail confrontation between Smith and Lampley:

Q. Why did you know ... how did you know that was a problem?

A. From the previous trial of '97, I was aware of the fact that one was probably going to be testifying against the other individual.

During the direct examination of Bob Baccus the following took place:

Q. Okay, do you remember testifying in this case in the previous trial?

A. Yes.

Q. Do you remember me asking you that very same question at the previous trial, Mr. Baccus?

A. It has been a while back, I can't really remember.

Q. It has been a couple of years since you testified?

A. Right.

Q. The last time?

A. Correct.

During Jana Brandle's cross-examination this occurred:

Q. Jana I remember an incident where you testified previously in this case, you remembered something very vivid about that experience at Bobby Baccus' house with that handgun don't you?

A. Yes.

During the cross-examination of Marlin Braxton, this exchange took place:

A. You was talking about the last trial. Cummings was on me so rough like I was the criminal. Like I was the one on trial.

. . .

Q. Bear with me a second okay. You made that response when an individual named Doug Long was asking you questions, right?

A. Yeah, I told him. . . .

Q. Before Mr. Cummings asked you a single question. . . .

During redirect examination of Harrison Jackson, this exchange occurred:

Q. It has been a couple of years since you testified the last time, is that correct?

A. That is also correct.

Finally, during redirect examination of Burt Lawler, this occurred:

Q. It is not the first time you testified under oath that you said that is it?

A. No sir.

Q. Been in court on a prior proceeding a couple of years ago and said the very same thing didn't you.

A. Yes sir.

police or jail officials. Braxton testified that he saw Lampley and Smith together the day after the murder and that Lampley was carrying a gun. Braxton admitted on cross-examination that he did not report this information to the police. Smith argues that in some jurisdictions, cross-examination about a defense witness' failure to volunteer information to the police has been deemed improper. That may be true, but there is no such authority in this state, and failure to object cannot be the basis of a serious performance shortcoming.

■ Smith next contends his counsel should have objected to testimony from some witnesses that they were nervous about testifying. Lampley testified that he was nervous about testifying and that he had been attacked while in prison because of his earlier testimony in the case. A deputy prosecutor also testified that he feared Lampley would be killed before he could testify. Brandle testified that she was scared to testify against Smith. Smith contends there was no evidence linking him to the attack on Lampley or to the fears expressed by Lampley, Brandle, and the deputy prosecutor. Smith argues that allowing this testimony left the jury with the impression that he was a killer who was likely to retaliate against a witness.

Smith contends that his counsel should have objected to this testimony. He relies on *Cox v. State*, 422 N.E.2d 357 (Ind.Ct. App.1981), in which the court held that testimony about threats made against a witness is admissible only where a proper foundation has been laid showing the threats were made either by the defendant or with the defendant's knowledge or authorization. *Id.* at 361–62. Here we have only testimony that the witnesses feared they might be harmed if they testified, not that they had been threatened. Without a

showing tying these fears to Smith, its admission is error—for the same reason other unspecified threats are improper.

■ Finally, Smith contends his counsel should have objected to cross-examination for which the prosecutor had not established a factual predicate. Smith argues the prosecutor's cross-examination of Byrd implied, with no factual basis, that Byrd had been asked to fabricate evidence for Smith. Byrd testified that he prepared an affidavit claiming that while Lampley and Byrd were incarcerated in the Madison County jail, Lampley told Byrd that Lampley had killed Riggs and planned to pin the killing on Smith. Smith contends his counsel should have objected to the following exchange during the cross-examination of Byrd about the affidavit:

Q. Isn't it true Mr. Byrd that Omond Smith, who you have known all of your life came to you and said, "I need some help on this murder case", correct?

A. Not really, no.

Q. Not really?

A. Omond didn't come to me and say, "Hey I got a murder case, I need help."

Q. But he came to you?

A. No....

. . .

Q. Maybe I was too specific in my question. Truth is Omond Smith came to you about this murder case is that correct?

A. Nah.

Q. Never happened?

. . .

Q. The truth is you wrote that affidavit out at Omond Smith's request didn't you?

A. No.

Smith contends the prosecutor had no reasonable basis for this line of questioning, so it was improper. He argues that because his defense turned on the credibility of Lampley, any improper attempt to reduce the credibility of a witness who undermined Lampley's credibility assumed great importance, and failing to object to this was ineffective assistance of counsel.

■ The trial court is vested with broad discretion in determining the scope and extent of cross-examination. *Haynes v. State,* 411 N.E.2d 659, 664 (Ind.Ct.App. 1980). As this Court has noted, "The scope of permissible cross-examination extends to all phases of the subject matter covered in direct examination and may include any matter which tends to elucidate, modify, explain, contradict, or rebut testimony given in chief by the witness." *Dean v. State,* 272 Ind. 446, 449, 398 N.E.2d 1270, 1272 (1980). Further, "once a party opens up a subject on direct examination, he can not close the subject to cross-examination at his own convenience." *Martin v. State,* 261 Ind. 492, 494, 306 N.E.2d 93, 94 (1974).

We do not agree there was no reasonable basis for the prosecutor's line of questioning. On direct examination, Byrd testified that Lampley told Byrd that Lampley had killed Riggs and planned to pin the blame on Smith. On cross-examination, Byrd testified that Doug Long was attorney for both Smith and Byrd at the time, and that Byrd had conveyed Lampley's revelation to Long. Byrd did not remember ever speaking directly to Smith about the matter. According to Byrd, Long told Byrd to prepare an affidavit detailing Lampley's statements. The prosecutor attempted to impeach Byrd's version of events by pointing out that Long did not represent Smith at that time. Immediately following this impeachment, the prosecutor, apparently attempting to impeach the veracity of the affidavit, began the line of questioning wherein he alleged Byrd had been directed by Smith, not Long, to prepare the affidavit. Smith has not made a persuasive case that there was no reasonable basis for the prosecutor's attempt to impeach the veracity of the affidavit by suggesting it was Smith, not Long, who asked Byrd to prepare it. Smith has not demonstrated that an objection to this line of questioning would have been sustained.

■ In sum, only one of Smith's proposed objections, if properly made, would have been sustained. We do not find the errant admission of testimony of unspecified concerns of witnesses to rise to the level of defective performance necessary to support a claim of ineffective assistance of counsel under *Strickland.*

### Conclusion

The judgment of the trial court is affirmed.

SHEPARD, C.J., and DICKSON, SULLIVAN, and RUCKER, JJ., concur.