## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 12 2016, 6:59 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Stephen T. Owens
Public Defender of Indiana

Vickie Yaser
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Justin F. Roebel
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Moses Giger,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

December 12, 2016

Court of Appeals Case No.
71A03-1602-PC-392

Appeal from the St. Joseph
Superior Court

The Honorable Jerome Frese,
Judge

Trial Court Cause No.
71D03-0501-PC-7

**Barnes, Judge.**

# Case Summary

Moses Giger appeals the post-conviction court's denial of his petition for post-conviction relief, which challenged his conviction and sentence for murder. We affirm.

# Issues

Giger raises numerous issues, which we consolidate and restate as:

> I. whether Giger was denied the effective assistance of trial counsel; and
>
> II. whether Giger was denied the effective assistance of appellate counsel.

# Facts

The facts, as set out in Giger's direct appeal, follow:

> On February 2, 2002, Giger went to the home of his neighbor, Angela Husband. Husband was a prostitute and Giger paid her regularly with either money or drugs for sexual services. When Giger arrived at Husband's, he had only a small amount of crack cocaine and told Husband he would return later if he could get more cocaine with which to pay her.
>
> Giger called James Thorpe (also known as "Cash"), a drug dealer with whom Giger had regular contact and from whom Giger had purchased drugs within the preceding week. Thorpe asked Giger to drive him somewhere and Giger picked him up. Giger drove Thorpe to a residence. Giger remained in the car while Thorpe exited, presumably to approach the house. Thorpe took Giger's keys with him to make sure that Giger would not leave him stranded at the house. Giger, in turn, held some of

Thorpe's drugs to make sure Thorpe would return. Giger claims he saw Thorpe running down the street and Giger chased him because Thorpe had Giger's car keys. Giger claims that he fell while chasing Thorpe. After falling, Giger saw a knife on the ground and picked it up. He claims that he found Thorpe's body a few feet from the knife and was unable to rouse him.

Giger took the knife with him and drove home. He left the knife by the front door. After noting that he had blood on his hands and pants, he washed his hands and changed his pants. He later returned to Husband's house with a handful of cocaine packets. Giger, Husband, and Husband's mother consumed the cocaine. After the cocaine was consumed, Giger left and returned with more drugs.

Thorpe's body was found in a pool of his blood on the morning of February 3 at the corner of College and Sibley Streets in South Bend. Thorpe had been stabbed twenty-one times with a knife, puncturing both lungs, his aorta, and damaging his heart. The wounds included several stabs to his back, stabs to his arms suggesting defensive wounds and a cluster of stab wounds to the chest at least two of which the pathologist classified as perimortem or postmortem wounds.

Husband contacted the South Bend police stating that she believed Giger may have killed Thorpe. The police recovered several items from Giger's home including the knife and two pairs of Giger's jeans. Thorpe's blood was found on Giger's car, jeans, left shoe, and on the knife. Police officers also recovered $359.95 in blood-covered currency in Giger's possession. The State performed DNA testing on items taken from Giger as well as items recovered from the crime scene. The only recovered DNA inconsistent with Giger or Thorpe was from the headband of Thorpe's baseball cap and the outside of Thorpe's pockets.

*Giger v. State*, No. 71A05-0306-CR-286, slip op. at 2-4 (Ind. Ct. App. Apr. 12, 2004).

[4] The State charged Giger with murder, and a jury found him guilty as charged. The trial court sentenced him to sixty-five years in the Department of Correction with five years suspended, thirty years of probation, and $3,500 in restitution. Giger appealed his conviction and sentence. He challenged the sufficiency of the evidence to sustain his conviction and his sentence, including the probationary term and the restitution. We affirmed his conviction and sixty-five-year sentence, but we reduced the probationary term and remanded regarding the restitution order. *Id.* at 16.

[5] In 2005, Giger filed a petition for post-conviction relief, and he filed six amended petitions. In general, Giger alleged that his trial counsel, Neil Weisman, and appellate counsel, Sean Hilgendorf, were ineffective. After evidentiary hearings on three dates in 2015 and 2016, the post-conviction court issued findings of fact and conclusions of law denying Giger's petition for post-conviction relief. Giger now appeals.

## Analysis

[6] Giger argues that the post-conviction court's denial of his petition is clearly erroneous. A court that hears a post-conviction claim must make findings of fact and conclusions of law on all issues presented in the petition. *Pruitt v. State*, 903 N.E.2d 899, 905 (Ind. 2009) (citing Ind. Post-conviction Rule 1(6)). "The findings must be supported by facts and the conclusions must be supported by

the law." *Id.* Our review on appeal is limited to these findings and conclusions. *Id.* Because the petitioner bears the burden of proof in the post-conviction court, an unsuccessful petitioner appeals from a negative judgment. *Id.* (citing P-C.R. 1(5)). "A petitioner appealing from a negative judgment must show that the evidence as a whole 'leads unerringly and unmistakably to a conclusion opposite to that reached by the trial court.'" *Id.* (quoting *Allen v. State*, 749 N.E.2d 1158, 1164 (Ind. 2001), *cert. denied*). Under this standard of review, "[we] will disturb a post-conviction court's decision as being contrary to law only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion." *Id.*

## I. Ineffective Assistance of Trial Counsel

[7] Giger raises numerous arguments that his trial counsel was ineffective. To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that his or her counsel's performance was deficient and that the petitioner was prejudiced by the deficient performance. *Ben-Yisrayl v. State*, 729 N.E.2d 102, 106 (Ind. 2000) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984)), *cert. denied*. A counsel's performance is deficient if it falls below an objective standard of reasonableness based on prevailing professional norms. *French v. State*, 778 N.E.2d 816, 824 (Ind. 2002). To meet the appropriate test for prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* "A reasonable

probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. Failure to satisfy either prong will cause the claim to fail. *Grinstead v. State*, 845 N.E.2d 1027, 1031 (Ind. 2006). Most ineffective assistance of counsel claims can be resolved by a prejudice inquiry alone. *Id.*

### A. Conflict of Interest

Giger first argues that his trial counsel was ineffective because he had a conflict of interest. Giger contends that, after filing an appearance for him in January 2002, his trial counsel appeared as a public defender for Demetric Johnson, a witness in Giger's case, in unrelated criminal charges. Johnson was then a witness called by the State at Giger's trial, which occurred after her charges were resolved.

The post-conviction court rejected Giger's claim and found:

> Petitioner claims that he was deprived of effective assistance of counsel because Mr. Weisman also represented Demetric Johnson, a witness in the case.
>
> The evidence showed, however, that Mr. Weisman's representation of Ms. Johnson had ended long before Petitioner's trial was held. There was no indication that Mr. Weisman's prior representation of Ms. Johnson had touched on matters relevant to Petitioner's case at all.
>
> More importantly, Mr. Weisman explained that he didn't believe there was any conflict because he did not view Ms. Johnson as an adverse witness. Although she was called by the State, he

testified that he would have called her as a defense witness if the State had not called her. Mr. Weisman wanted to use Ms. Johnson, not attack her.

Finally, this Court believes Mr. Weisman—and does not believe Petitioner—on the issue of disclosure. Mr. Weisman testified that he discussed the matter with Petitioner prior to trial. Although this is disputed by Petitioner, this Court finds that Petitioner has not carried his burden of proof on this issue.

Appellant's App. Vol. III pp. 93-94.

[10] "The federal constitutional right to effective assistance of counsel necessarily includes representation that is free from conflicts of interest." *Woods v. State*, 701 N.E.2d 1208, 1223 (Ind. 1998) (citing *Wood v. Georgia*, 450 U.S. 261, 271, 101 S. Ct. 1097 (1981)), *cert. denied*. "To establish a violation of the Sixth Amendment due to a conflict, a defendant who failed to raise the objection at trial must demonstrate that trial counsel had an actual conflict of interest and that the conflict adversely affected counsel's performance." *Id.* (citing *Cuyler v. Sullivan*, 446 U.S. 335, 348, 100 S. Ct. 1708 (1980)). Once the two prongs of *Cuyler* are met—actual conflict and adverse impact—prejudice is presumed. *Id.* (citing *Burger v. Kemp*, 483 U.S. 776, 783, 107 S. Ct. 3114 (1987)).

[11] We first consider whether Giger established an actual conflict of interest. The court in *Woods* described the difference between the possibility of a conflict and an actual conflict:

"There is the possibility of a conflict, then, if the interests of the defendants may diverge at some point so as to place the attorney

under inconsistent duties. There is an actual, relevant conflict of
interests if, during the course of the representation, the
defendants' interests do diverge with respect to a material factual
or legal issue or to a course of action." *Cuyler*, 446 U.S. at 356 n.
3, 100 S. Ct. 1708 (Marshall, J., concurring in part).

*Woods*, 701 N.E.2d at 1223 n.25. Giger argues that his trial counsel had an
actual conflict because of his representation of Johnson. Trial counsel testified
at the post-conviction hearing that he discussed his prior representation of
Johnson with Giger but that he did not view it as a conflict. He testified that he
did not view Johnson as a witness against Giger; rather, he used her as a
witness against Greene, who claimed to have found the victim's body. Trial
counsel testified, "It was to our benefit to use her to incriminate Mr. Greene
which in some way she did." PCR Tr. p. 231.

[12] The post-conviction court found that Giger had been informed of his trial
counsel's prior representation of Johnson, and we cannot reweigh that
evidence. *See McKnight v. State*, 1 N.E.3d 193, 199 (Ind. Ct. App. 2013) ("We
will not reweigh the evidence or judge the credibility of witnesses, and will
consider only the probative evidence and reasonable inferences flowing
therefrom that support the post-conviction court's decision."). Further, his trial
counsel's representation of Johnson was unrelated to Giger's case and ended
long before Giger's trial. Trial counsel's strategy to use Johnson to imply that
Greene committed the crime was a legitimate strategy, and we simply cannot
say there was anything more than the possibility of a conflict here.

[13]   Moreover, even if we were to assume that Giger's and Johnson's interests diverged and that an actual conflict of interest occurred, Giger has failed to demonstrate any adverse impact. An adverse effect on performance caused by trial counsel's failure to act requires a showing of: (1) a plausible strategy or tactic that was not followed but might have been pursued; and (2) an inconsistency between that strategy or tactic and counsel's other loyalties, or that the alternate strategy or tactic was not undertaken due to the conflict. *Woods*, 701 N.E.2d at 1223. According to Giger, his trial counsel should have informed the jury of Johnson's connections to Thorpe and Greene, pointed out discrepancies between her police report, deposition, and trial testimony, and discussed her crimes of dishonesty. Giger implies that Johnson may have played a role in Thorpe's death and that his trial counsel's strategy of using Johnson to implicate Greene was ineffective.

[14]   During the post-conviction proceedings, Giger presented absolutely no evidence that Johnson was somehow involved in Thorpe's death. There is also no evidence that his trial counsel would have somehow implicated Johnson if not for his prior representation of her. His unsubstantiated assertions of an actual conflict and unsupported speculation as to Johnson's involvement in the crime are simply insufficient to demonstrate ineffective assistance of counsel. The post-conviction court's finding is not clearly erroneous.

## B. Failure to Investigate and Cross-Examine Effectively

Giger next argues that his trial counsel failed to effectively cross-examine and investigate Angela Husband, George Greene, Mario Stewart, Adrian Vanison, and Rebecca Tobey.

Husband was Giger's girlfriend, and she spent time with Giger on the night of Thorpe's murder. Husband reported her suspicions regarding Giger's involvement with the murder to the police. Giger argues that his trial counsel failed to cross-examine Husband regarding inconsistencies between her initial statements to police, her deposition testimony, and her trial testimony. Giger also argues that his trial counsel should have questioned Husband regarding her description of a garage with respect to an incident unrelated to the murder.

Greene found Thorpe's body. Giger argues that his trial counsel should have cross-examined Greene regarding some inconsistencies between his statements to the police and his trial testimony and regarding his criminal history. Giger contends that his trial counsel missed opportunities to highlight "seemingly helpful evidence." Appellant's Br. p. 42.

Stewart was a jail house informant who claimed that Giger confessed to him while they were housed together. Giger contends that his trial counsel was ineffective for failing to correct or point out inconsistencies, failing to imply that Stewart read newspaper coverage of Giger's case, and failing to point out benefits that Stewart received for his testimony.

Vanison was a friend of Thorpe and testified regarding Thorpe's activities on the evening of his death. Giger argues that Vanison's testimony was different than his deposition testimony and initial accounts and that his trial counsel failed to investigate Vanison's criminal history.

Finally, Tobey was a DNA analyst. Giger argues that his trial counsel failed to adequately cross-examine her regarding "extraneous possible alleles" found on certain pieces of evidence. Appellant's Br. p. 50.

Giger also argues that he was "prejudiced by the jury's lack of information relative to the credibility of four witnesses: Husband, Green and Vanison had pending cases and Johnson was on probation." Appellant's Br. p. 33.

On the issue of trial counsel's cross-examination and investigations, the post-conviction court found:

> Petitioner complains that his trial attorney, Mr. Neil Weisman, did not adequately cross examine and impeach various trial witnesses. In fact, a review of the trial record reveals that Mr. Weisman DID cross examine the various witnesses, and DID argue to the jury that the trial testimony of those witnesses was suspect. Although Petitioner acknowledges that fact, he believes that Mr. Weisman should have done MORE to impeach and attack witnesses, and that his failure to do so amounted to ineffective assistance.

> This Court finds otherwise. Mr. Weisman was already an experienced trial lawyer at the time of the trial. He explained during his testimony at the PCR hearings that he had to strategically pick and choose which battles to fight with witnesses in front of the jury. He explained that the demeanor of witnesses

could impact whether he allowed various portions of testimony to go unchallenged during cross examination. He explained that the defense theory of the case also required him to sift through the witnesses' trial testimony, asking the jury to accept some of the testimony while rejecting other portions. This strategy would have been incompatible with the sort of "no-holds-barred" cross examination that Petitioner is now claiming to be essential. The Court finds Mr. Weisman's strategy and tactics—and explanation for them—to be reasonable.

Further, it is essential to point out that Petitioner has not demonstrated what the outcome or results of additional cross examination would have been. Petitioner repeatedly insists that trial counsel should have "explored" issues more fully (either pre-trial or during cross examination), or that trial counsel should have more fully "impeached" witnesses. *But Petitioner has not proved how the witnesses would have answered such cross examination questions, or how the witnesses would have responded to increased attacks on their credibility, or whether the State would have been able to effectively counter such tactics.* This Court declines the apparent invitation to simply assume that the result of "further exploration" of the issues suggested by Petitioner with trial witnesses would have caused the witnesses to crumble in front of the jury.

The Court finds Petitioner has not met the first prong of the *Strickland* test with respect to Mr. Weisman's cross examination at trial. There was no deficient performance.

The Court further finds that Petitioner has not met the second prong of the *Strickland* test on this issue. Even if the additional cross examination matter suggested by Petitioner during the PCR hearing were brought out in front of the jury, there is absolutely no reason to believe that the outcome of the trial would have been different. The core facts outlined above would have remained the same. There was no possible prejudice.

* * * * *

> One of the State's witnesses, Angela Husband, made a statement about a prior event that occurred in a garage. To be clear, the murder did not happen in a garage or at the time of that alleged prior event. Still, Petitioner claims that his trial counsel should have located and presented witnesses (family members) who could have contradicted that statement about the garage, and that the failure to do so constituted ineffective assistance.

> Petitioner has not demonstrated how his trial attorney should have been responsible for doing that. He has not explained why he did not give his attorney the information about his family members or their possible value as witnesses. He has not demonstrated poor performance and thus fails on the first *Strickland* prong.

> Petitioner also fails on the second *Strickland* prong. The condition of the garage—and Angela Husband's credibility on that point—were extremely minor points. The relevance of these topics was miniscule compared to the core facts of the case outlined above. The outcome of the trial would not have been different even if trial counsel had called family members to describe the condition of the garage.

Appellant's App. Vol. III pp. 88-91.

[23] "Counsel is afforded considerable discretion in choosing strategy and tactics, and we will accord those decisions deference." *Smith v. State*, 765 N.E.2d 578, 585 (Ind. 2002). "A strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* "We recognize that even the finest, most

experienced criminal defense attorneys may not agree on the ideal strategy or the most effective way to represent a client." *Id.* "Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective." *Id.* Whether a lawyer performed reasonably under the circumstances is determined by examining the whole of the lawyer's work on a case. *Brightman v. State*, 758 N.E.2d 41, (Ind. 2001). "A defendant must offer strong and convincing evidence to overcome the presumption that counsel prepared and executed an effective defense." *Id.*

[24] Giger essentially challenges his trial counsel's strategy. His trial counsel testified at the post-conviction hearing that his strategy was to portray Greene as an alternate suspect for the crime. Giger's trial counsel found Greene's story to be "pretty wild and unbelievable." PCR Tr. p. 227. At the trial, Giger's counsel cross-examined the witnesses at issue and challenged their credibility. Although Giger now argues that his trial counsel should have cross-examined the witnesses more extensively on certain topics, his trial counsel had significant discretion on strategy, and as a whole, his performance was not deficient.

[25] Even if Giger could show that his trial counsel was deficient, he cannot demonstrate prejudice from the alleged deficiencies. In his interview with police after the murder, Giger admitted that he was with Thorpe on the night of his death and that he was trying to get drugs from Thorpe. Giger claimed that he was driving around with Thorpe and that they stopped at a house for Thorpe. He claimed that he kept Thorpe's drugs in the car and that Thorpe

took the car keys into the house. According to Giger, he saw Thorpe running down the street a few minutes later and followed him. He claims to have found Thorpe dead and claims to have taken his car keys from Thorpe's pocket. Giger was found in possession of the murder weapon (a knife) and cash covered in Thorpe's blood, and he admitted to consuming Thorpe's drugs. Thorpe's blood was also found on Giger's car, clothing, and shoe. Thorpe had been stabbed twenty-one times, including some postmortem injuries. Even if Giger's trial counsel was deficient for failing to cross-examine the witnesses more extensively on certain topics, the overwhelming evidence supported Giger's conviction, and Giger has failed to demonstrate that he was prejudiced by trial counsel's alleged deficiencies.

### C. Evidence of Peaceful Character

[26] Giger argues that his trial counsel was ineffective for failing to present evidence of his peacefulness. Giger argues that his trial counsel should have called James Williams as a witness. At the post-conviction hearing, Williams testified that he had known Giger well when they were children and, to a lesser extent, as adults. Williams testified that, in his experience, Giger was a peaceful person. However, Williams also testified that he was unaware of Giger's drug usage.

[27] On this argument, the post-conviction court found:

> Petitioner complains that his lawyer should have called Pastor
> James Williams (or anyone else) to testify to Petitioner's

"character for peacefulness" during the trial, and that the failure to call such witnesses constituted ineffective assistance.

The substance of what James Williams would have been able to testify to was explored at the January 2015 evidentiary hearing. His basis for knowledge was limited, constituting mostly of contact with Petitioner from decades earlier (although he had some continued, albeit lesser, contact with Petitioner as adults.) Mr. Williams lacked knowledge of much of Petitioner's adult lifestyle and activities, and Mr. Williams lacked knowledge of the facts of the case.

Mr. Weisman testified that he successfully conveyed to the jury through other witnesses the basic fact that Petitioner was "a good guy" even though he didn't specifically call a character witness during trial. He further testified that in his experience, juries did not respond well to defense character witnesses. Indeed, this Court agrees that attempting to introduce character evidence on behalf of a Defendant who smoked crack cocaine (acquired from a dead man) with a prostitute after being stained with the dead man's blood would probably have backfired. There was no deficient performance, and no possibility of prejudice.

Appellant's App. Vol. III p. 91.

[28] Giger's trial counsel testified at the post-conviction hearing that he did not "normally bring three or four or five people up here to say, hey, he's a good guy. [He did not] find that effective." PCR Tr. p. 479. He thought "it sometimes can be taken as pandering to the jury," so it was not usually his course of action to present such evidence. *Id.* This was a strategic decision, and trial counsel is afforded considerable discretion in choosing strategy. *Smith,* 765 N.E.2d at 585. Giger has failed to demonstrate that trial counsel's performance

was deficient.  Further, given the overwhelming evidence against Giger, even if trial counsel had presented Williams's testimony, Giger has failed to demonstrate that the result of the proceeding would have been different.

### D.  Failure to Redact Interrogation

[29]    Giger argues that his trial counsel was ineffective for failing to redact certain portions of the police interrogation of him.  Specifically, Giger complains about the following statements by police during the interrogation:

- You expect I'm gonna sell this story to somebody that's gonna say now wait a minute, don't we have some problems here?

- How are we supposed to sell this story to somebody and believe your story when the most important things about this, you left out!

- Well I know you were at Angie's house, you came in there huffin and puffin and all sweating and out of god**** breath!

- And you had blood all over your pants.

- So all the blood they see on your hands and all the blood they see on your pants, that come from you slipped on your . . . .

- What would they lie about, why would they lie about you coming in there being all sweaty, out of breath, thumping thumping, acting like something was strange, acting like something's going on, got blood all over your pants, got

blood all over your hands and you got a pocket full of money and you're flashing all this money at 'em. You gonna tell that they're lying about that.

- You know what I see, you think I want to sell this story to somebody else. I'll tell you what story I'm gonna sell to you, you put yourself in this, and I ain't got . . . I'm convinced that you ain't telling me the truth. Ok. You didn't take nothing but the keys out of his pocket but the money laying up on the god**** dresser's got blood all over it . . . .

- So the money you would have gotten would have come from Chicago. Now you need to explain the fact that the victim's blood is on the . . . let me finish . . . is on the money that you brought back from Chicago after you changed clothes and washed your hands. Shouldn't be there!

- So you would have had to have blown $350.00 someplace.

- This is a hard one man, serious, I want to believe you, I really do. But it's just not adding up.

- I'm looking at this knife and it's got blood on it and I'm thinking to myself it can't be this easy.

Appellant's Br. pp. 53-54. Giger argues that his trial counsel should have requested a redaction of the interrogation or sought a limiting instruction.

[30] The post-conviction court rejected Giger's argument and found:

Petitioner's interview with police was admitted at trial. Petitioner claims that his trial lawyer should have attempted to have the interview recording redacted, or should have requested a limiting admonishment, because the recording contained "inadmissible and prejudicial comments made by police."

Mr. Weisman testified during the PCR proceedings that he didn't believe that anything on the recording was especially egregious or out of the ordinary, and thus that it didn't require redaction or an admonishment. He further testified that he believed that allowing the jury to see and consider the interview in its entirety—and without comment by the Court—was in Petitioner's best interest. He believed that Petitioner held up very well in spite of strong pressure from police, and he wanted the jury to see that in an unvarnished way.

This Court, especially under the deferential review required when considering trial attorney's performance, cannot find that this was deficient performance.

Appellant's App. Vol. III p. 92.

[31]  Giger's trial counsel testified at the post-conviction hearing that the "statements by the police officers were pretty standard type stuff they are using to try and get information or elicit more information or elicit a confession." PCR Tr. p. 467. He thought that Giger did "so well holding up to their . . . browbeating him that [he] thought [the interrogation] did him more good than bad." *Id.* Additionally, Giger's trial counsel used the interrogation statement regarding the investigation being "easy" during his cross-examination of the detective to point out that the detective did not look at other suspects after finding the blood in Giger's car. Trial Tr. p. 1006. The admission of the police interrogation was

a matter of strategy, and Giger has failed to demonstrate that his performance was deficient.

[32] To the extent that Giger's counsel should have requested a limiting instruction, we conclude that Giger was not prejudiced by the alleged deficiency. *See Washington v. State*, 808 N.E.2d 617, 624-25 (Ind. 2004) ("[A]lthough a trial court has no affirmative duty to consider giving an admonishment in the absence of a party's request, it is error to admit statements by an interrogating officer without any limiting instruction or admonishment."). As the State points out, "most of the statements reflect evidence that was ultimately produced at trial such as evidence of Petitioner's shortness of breath and statements about the blood evidence." Appellee's Br. p. 38. The statements at issue merely challenge Giger's credibility or discuss cumulative evidence. Giger failed to demonstrate that, but for trial counsel's failure to redact or request a limiting instruction, the result of the proceeding would have been different.

### E. Failure to Object to Instructions

[33] Giger contends that his trial counsel was ineffective for failing to object to certain jury instructions regarding direct and circumstantial evidence. Specifically, Giger argues that his trial counsel should have objected to the following instructions:

> Circumstantial evidence means evidence that proves a fact from which an inference of the existence of another fact may be drawn. An inference is a deduction of fact that may logically and reasonably be drawn from another fact or group of facts. *You are entitled to draw reasonable inferences from the evidence.* It is not

necessary that facts be proved by direct evidence. Both direct evidence and circumstantial evidence are acceptable as a means of proof. *The State is not required to prove the essential elements of murder by eyewitness observation. Circumstantial evidence may establish the guilt of the defendant beyond a reasonable doubt.* However, in a case such as this where the evidence is entirely circumstantial, in order to convict, such circumstantial evidence must be so conclusive a character and point so surely and unerringly to the guilt of the accused as to exclude every reasonable hypothesis of innocence.

Tr. p. 1378 (emphasis added). Giger takes issue with the portions of the instructions in italics. According to Giger, the first and third italicized sentences were objectionable "on the basis of repetition," and the second italicized sentence unnecessarily highlighted "the acceptability of the State's lack of eyewitness evidence." Appellant's Br. p. 56.

[34] Giger also challenges his trial counsel's failure to object to the italicized portions of the following instruction:

You are the only judges of the weight of both the physical evidence and the testimony—believability, or "credibility"—of each of the witnesses. In considering the testimony of a witness—including the testimony of the defendant, who is a competent witness in his own behalf—you may take into account the witness's ability and opportunity to observe those things he or she testified to, the witness's memory, manner and conduct while testifying, any interest the witness may have in this case, any bias the witness may have for or against any party to this suit, any relationship with other witnesses or interested parties, and the reasonableness of the witness's testimony when viewed with all of the other evidence in the case. *The credibility of the defendant's testimony should be evaluated by you according to the same criteria that*

*you use for any other witness.* You should try to fit the evidence to the presumption that the defendant is innocent. Each witness in a trial takes an oath to testify truthfully. Therefore, you should not disregard the testimony of any witness without a reason, and then only after careful consideration. *The testimony of a witness does not have to be corroborated by other evidence for you to believe that witness.* However, if you find so much conflict between the testimony of two or more witnesses that you cannot believe each of them, then you must decide which witnesses you will believe and which you will disbelieve. *Or, if you decide that any witness's testimony is so unreasonable as to be unworthy of belief, you may disbelieve that witness. Furthermore, you should evaluate the testimony of each witness in light of all relevant physical evidence, and the reasonable inferences drawn from such physical evidence. If you have drawn reasonable conclusions about the physical evidence that prove inconsistent with the testimony of any witness, then you should reconsider both the physical evidence and that witness's testimony in order to resolve such apparent inconsistency. In other words, you must decide in such a case whether your conclusions drawn from the physical evidence are invalid, or whether you disbelieve the witness, or whether you are unable to draw any conclusion.*

In weighing the evidence to determine what or whom you will believe, you should use your own knowledge, experience and common sense gained from day to day living. You may find that your determination of the truth is not controlled by the number of witnesses who testify to a particular fact, or on one side or the other, or the quantity of evidence on a particular point. You should give the greatest weight to that evidence which convinces you most strongly of its truthfulness.

*Id.* at 1378-81 (emphasis added). According to Giger, the instruction "pitted testimonial evidence against physical evidence" and "did not allow for the jury

to accept both the physical evidence pointing to Giger's possible guilt but to also believe Giger's testimony that he was innocent." Appellant's Br. p. 58.

[35] On this issue, the post-conviction court found:

> Petitioner complains that his trial counsel should have objected to the final jury instructions regarding circumstantial evidence and the jury's responsibility to evaluate evidence. He claims that these instructions were erroneous, and that therefore a good trial lawyer should have kept the jury from being exposed to these instructions.

> Petitioner has waived this argument. He did not raise complaints about the instructions on direct appeal. Collateral attacks regarding the propriety of the instructions given should have been raised on appeal. If an issue was known and available, but not raised on direct appeal, it is waived. *Timberlake v. State*, 753 N.E.2d 591, 597 [(Ind. 2001)](citing *Rouster v. State*, 705 N.E.2d 999, 1003 (Ind. 1999)).

> Secondly, although Petitioner complains that these instructions were improper, he has not claimed that they incorrectly state the law. He has instead complained that they are inappropriate or confusing or repetitive. He has offered no on-point legal authority supporting that assertion. This Court is not aware of any binding precedent holding that the instructions at issue were faulty as a matter of law. This Court continues to find that the instructions were appropriate as a matter of law.

> Without demonstrating that the instructions were faulty as a matter of law, it is apparent that Petitioner's claim of ineffective assistance on this issue must fail. "Where a subject is properly covered by a given instruction, it is not error to fail to give a tendered instruction on the same subject." *McCurry v. State*, 558

> N.E.2d [817, 819] (Ind. 1990). In fact, it is apparent that this claim should be more appropriately addressed as a direct challenge to the instructions rather than a complaint about instructions that is couched in terms of "ineffective assistance."

Appellant's App. Vol. III pp. 89-90.

[36] We first address the post-conviction court's finding that Giger waived this argument by failing to raise an issue regarding the instructions on direct appeal. Giger raises this issue in the context of ineffective assistance of trial counsel, not a freestanding issue. Consequently, Giger's argument is properly raised, and the post-conviction court erred by finding that it was waived. *See Wilkes v. State*, 984 N.E.2d 1236, 1240 (Ind. 2013) (noting that claims of ineffective assistance of counsel may be proper grounds for post-conviction proceedings).

[37] We conclude, however, that Giger has failed to demonstrate ineffective assistance of counsel regarding this issue. The italicized portions of the instructions merely expound on the concepts of weighing the evidence, drawing inferences from the evidence, and judging a witness's credibility. Giger has not shown that the instructions misstated the law. Further, the instructions do not, as Giger asserts, unnecessarily highlight certain pieces of evidence or require the jury to choose between the physical evidence and Giger's testimony. Giger has also failed to demonstrate that, but for trial counsel's alleged deficiency in failing to object to these instructions, the result of the proceeding would have been different. We cannot say that Giger's trial counsel was deficient or that Giger was prejudiced by any alleged deficiency, and Giger's claim fails.

### F. Failure to Object to Prosecutorial Misconduct

[38] Giger argues that the deputy prosecutor committed misconduct during closing argument by "urg[ing] conviction based on facts it knew or should have known were false relative to the connection between Greene, Johnson and Thorpe, and reenact[ing] the murder improperly appealing to the jury's emotions rather than their reasoning." Appellant's Br. p. 58. Giger does not explain how the deputy prosecutor's closing argument was false, cites no authority for the proposition that the deputy prosecutor's conduct during closing arguments was improper, and fails to explain how Giger was prejudiced. Giger has waived this issue by failing to support it with cogent argument. *See* Ind. Appellate Rule 46(A)(8); *Lyles v. State*, 834 N.E.2d 1035, 1050 (Ind. Ct. App. 2005) (holding that an argument was waived for failure to support it with cogent reasoning), *trans. denied*.

### G. Failure to Present Mitigating Evidence

[39] Giger argues that his trial counsel failed to present mitigating evidence at the sentencing hearing. According to Giger, his trial counsel should have called Giger's family and Williams to testify at the sentencing hearing regarding Giger's difficult upbringing, kindness during his younger years, faithfulness, and closeness to his family.

[40] The post-conviction court rejected the claim and found:

> Petitioner presented evidence during the PCR hearings from his family members and a family friend. They testified that if they had been called to testify during sentencing, they would have

talked about Petitioner's good character, described him as a good man or family man, and that they would have asked the Court to have mercy. Petitioner claims that the failure to actually present this evidence at his sentencing hearing meant that his trial attorney was ineffective.

First, since the Court of Appeals has already reviewed the aggravating and mitigating factors in this case and has found the sentence to be appropriate, it appears that issues related to sentencing might well be res judicata and thus off-limits for a PCR.

Second, at sentencing this Court already considered Petitioner's connections to family, his employment history, and other mitigating factors at sentencing. Having now heard and evaluated the testimony available from Petitioner's family members, this Court concludes that such testimony would not have made a difference in the sentence imposed.

Third, Petitioner has not demonstrated why this was his lawyer's responsibility. During his PCR hearing, he admitted that he had not asked his lawyer to call these potential witnesses. This Court informed him of his right to call such witnesses when the sentencing hearing was set.

Appellant's App. Vol. III pp. 92-93.

[41] The post-conviction court first found that the claim was barred by res judicata because a sentencing claim was presented on direct appeal. Again, Giger raises this claim in the context of ineffective assistance of trial counsel, not as a freestanding issue. Consequently, the issue is properly raised, and we will address it.

[42]  At the sentencing hearing, Giger's trial counsel noted Giger's "total lack of criminal history," his "solid work history," and the fact that his income "helped to support his mother." Trial Sentencing Tr. p. 8. The trial court recognized that Giger was very helpful to his family, had no prior criminal history, and had been working; however, the trial court found the "particular circumstances of the day and of the evening . . . to be extremely aggravating." *Id.* at 25-26. The trial court especially noted the fact that Giger was attempting to obtain cocaine on the evening of the offense for himself and for Husband so that he could obtain sexual favors. The trial court also noted that Thorpe was stabbed twenty-one times, which he found was an "extreme aggravator." *Id.* at 26. The trial court then found that the "particularly vicious murder [was] a matter of great aggravation which outweighs the mitigators . . . ." *Id.* at 27. On direct appeal, we found that the trial court properly sentenced Giger.[1]

[43]  Even if Giger's trial counsel had presented additional evidence regarding fifty-one-year-old Giger's childhood, kindness during his younger years, faithfulness, and closeness to his family, it was unlikely to have resulted in a different sentence. Each of the witnesses acknowledged that they had limited contact with Giger during his later years and either suspected or were aware that he was using illegal drugs. The trial court put great weight on the brutality of the offense and on Giger's criminal activity on the evening of the murder. Given

---

[1] This court did find the probationary period and the restitution ordered by the trial court to be problematic and reduced the probationary period and remanded regarding the restitution. *See Giger*, No. 71A05-0306-CR-286, slip op. at 14-15.

the viciousness of the murder, there is no reasonable probability of a different sentence even if trial counsel had presented the testimony from Giger's sisters and Williams.

### H. Cumulative Effect

Giger next argues the cumulative effect of the alleged deficiencies discussed above resulted in "denying him the advocacy on which our system depends and that is promised by the Sixth Amendment." Appellant's Br. p. 59. The cumulative effect of a number of errors can render counsel's performance ineffective. *Grinstead,* 845 N.E.2d at 1036. For the most part, however, Giger has failed to demonstrate that his trial counsel's performance was deficient. Moreover, given the overwhelming evidence against Giger, any alleged deficiency did not result in prejudice to Giger. Consequently, his claim of cumulative effect fails. *See id.* at 1037 ("Most of Grinstead's contentions of deficient performance are not well taken, and the modest nature of counsel's one or two failings make them insufficient to overcome the strong presumption that counsel performed adequately within the meaning of the Sixth Amendment.").

### II. Ineffective Assistance of Appellate Counsel

Giger next claims that he was denied the effective assistance of appellate counsel. Ineffective assistance of appellate counsel claims generally fall into three basic categories: (1) denial of access to an appeal; (2) waiver of issues; and (3) failure to present issues well. *Reed v. State*, 856 N.E.2d 1189, 1195 (Ind.

2006). Giger's claim falls under the third category. Our supreme court has held that "[c]laims of inadequate presentation of certain issues, when such were not deemed waived in the direct appeal, are the most difficult for convicts to advance and reviewing tribunals to support" for two reasons. *Bieghler v. State*, 690 N.E.2d 188, 195 (Ind. 1997), *cert. denied*.

> First, these claims essentially require the reviewing tribunal to re-view specific issues it has already adjudicated to determine whether the new record citations, case references, or arguments would have had any marginal effect on their previous decision. Thus, this kind of ineffectiveness claim, as compared to the others mentioned, most implicates concerns of finality, judicial economy, and repose while least affecting assurance of a valid conviction.

*Id.* Second, "an Indiana appellate court is not limited in its review of issues to the facts and cases cited and arguments made by the appellant's counsel." *Id.* As a result, "an ineffectiveness challenge resting on counsel's presentation of a claim must overcome the strongest presumption of adequate assistance." *Id.* at 196. "Relief is only appropriate when the appellate court is confident it would have ruled differently." *Id.*

According to Giger, his appellate counsel "misstated the record when he said that Giger testified he had seen Thorpe run from the house" and failed to file a reply brief to correct the State's assertion that Giger "testified that he watched Thorpe run from the house, he gave chase, and then he found Thorpe's body." Appellant's Br. p. 63. Giger asserts he actually testified that he saw Thorpe walk to the side of the house and that he pulled the car around to the front

where he smoked crack cocaine in his car. He then saw Thorpe running up the street. After a few minutes, he followed Thorpe and found him on the ground. This court's direct appeal opinion stated:

> Giger claims he saw Thorpe running down the street and Giger chased him because Thorpe had Giger's car keys. Giger claims that he fell while chasing Thorpe. After falling, Giger saw a knife on the ground and picked it up. He claims that he found Thorpe's body a few feet from the knife and was unable to rouse him.

*Giger*, No. 71A05-0306-CR-286, slip op. at 3. Giger argues that "Appellate counsel's failure to correctly state the facts, correct the State's inaccurate version, and challenge the Appellee's faulty conclusions prejudiced Giger because the incorrect facts may have given rise to the false impression that the evidence against Giger was overwhelming." *Id.* at 64.

[47] The post-conviction court rejected Giger's argument and found:

> Petitioner has argued that appellate counsel was ineffective. Petitioner has not offered any facts of testimony or evidence regarding these claims, although there have been evidentiary hearings held on three separate days over the time span of a year. In all aspects, the law is with the State and against the Petitioner. The Petitioner is entitled to no relief on any of his claims.

Appellant's App. Vol. III p. 94.

[48] Both Giger's direct appeal appellant's brief and the State's direct appeal appellee's brief summarize the facts and note that Giger saw Thorpe running

down the street, which is supported by the evidence presented at the jury trial. Moreover, in Giger's statement to the police, he stated that Thorpe was running from the house. Neither Giger's appellate counsel nor the State misstated the facts in their briefs. Even if Giger's appellate counsel misstated the facts or should have filed a reply brief to correct the alleged misstatement by the State, we cannot say that Giger was prejudiced by the alleged deficiency. Giger's argument concerns a minor piece of evidence presented at the trial. Given Giger's possession of the bloody knife, the DNA evidence, and the other evidence of his guilt, he has failed to prove that the outcome of the appeal would have been different.

## Conclusion

[49] The post-conviction court properly denied Giger's claims of ineffective assistance of trial counsel and ineffective assistance of appellate counsel. We affirm.

Affirmed.

Riley, J., and Bailey, J., concur.