## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEYS FOR APPELLANT

Stephen T. Owens
Public Defender of Indiana

J. Michael Sauer
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Ellen H. Meilaender
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Myron B. James,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent*

April 13, 2015

Court of Appeals Case No.
79A02-1410-PC-716

Appeal from the Tippecanoe
Superior Court
The Honorable Randy J. Williams,
Judge
Cause No. 79D01-1109-PC-13

**Bradford, Judge.**

# Case Summary

[1]     In October of 2007, officers with the Lafayette Police Department learned that Appellant-Petitioner Myron B. James, Servan Allen, and Byron Simmons were

selling cocaine out of a Lafayette apartment. On October 16, 2007, James, with the aid of his then-girlfriend, Sparkle Bennett, sold .035 grams of cocaine to an undercover Lafayette officer. James, Allen, and Simmons were subsequently found to be in possession of 53.42 grams of cocaine. Appellee-Respondent the State of Indiana (the "State") subsequently charged James with numerous crimes, including Class B felony conspiracy to commit dealing in cocaine, Class A felony dealing in cocaine, Class A felony possession of cocaine, and Class D felony obstruction of justice. Following a jury trial, James was found guilty of Class B felony conspiracy to commit dealing in cocaine and not guilty of the remaining charges. The trial court sentenced James to a term of forty-five years of imprisonment.

[2] James subsequently challenged his sentence, which was affirmed on direct appeal. James then filed a petition seeking post-conviction relief ("PCR"). Following an evidentiary hearing on James's PCR petition, the post-conviction court denied the petition. We affirm.

## Facts and Procedural History

[3] In October of 2007, Bennett lived on Green Acres Drive in the Bridgewater Apartments in Lafayette. Bennett had been involved in a romantic relationship with James for several years. Bennett knew Allen and Simmons through James. James, Allen, and Simmons sold crack cocaine out of Bennett's apartment. They would sometimes use Bennett to deliver the drugs in question. James, Allen, and Simmons each had a "work phone" that they used to set up

their cocaine sales. Trial Tr. p. 42. The number for this phone was "765-337-2604." Trial Tr. p. 42.

[4] At some point during October of 2007, the Lafayette Police Department was provided with information about, and a phone number for, a cocaine dealer operating out of the Bridgewater Apartments. The phone number was "765-337-2604." Trial Tr. p. 121. Acting in an undercover capacity, on October 16, 2007, Lafayette Police Officer Jason Walters called the phone number provided to police and arranged to purchase cocaine. Officer Walters spoke with both James and Allen. James asked Officer Walters how he knew about him, asked for Officer Walter's location and told him to call back when he was closer, asked him "how much you got," and asked him the color of his vehicle. Trial Tr. p. 61; State's Ex. 4.

[5] After receiving the phone call from Officer Walters, James handed Bennett some cocaine and said "Here, baby, take this outside for me." Trial Tr. p. 47. James, Allen, and Simmons all remained inside Bennett's apartment. Approximately two or three minutes after James asked Officer Walters to describe his vehicle, Bennett came outside, spat cocaine out of her mouth, and handed it to Officer Walters in exchange for money. Bennett was then placed under arrest. Subsequent testing confirmed that Bennett delivered .035 grams of cocaine to Officer Walters.

[6] Shortly after Bennett's arrest, police set up a perimeter around Bennett's apartment building so that no one else could enter or exit Bennett's apartment.

After the perimeter was set up, Allen opened the back door to the apartment. Officer Robert Petillo instructed Allen to "Stop. Police." Trial Tr. p. 226. Allen disregarded Officer Petillo's instruction and slammed the door shut. Another individual was observed looking out of a window. Officer Petillo also observed multiple people running around inside the apartment.

[7] After receiving Bennett's consent to search her apartment, officers knocked and announced, but received no answer. When officers entered the apartment, they found James, Allen, and Simmons in the living room. Officers found that the toilet in the upstairs bathroom was clogged and there was water on the floor. After removing the toilet, the officers recovered 53.42 grams of cocaine. Simmons's pants were wet in the front and he gave the police a false name and date of birth. The cell phone registered to the 735-337-2604 number was found in the pocket of a coat hanging in the closet. The battery for the phone was found under the couch. Allen and Simmons were found with $2980 and $1020 on their persons, respectively. Police also found a pair of "soaking wet" jeans on the bed in the bedroom. Trial Tr. p. 148.

[8] Our opinion in James's prior direct appeal, which was handed down on April 26, 2011, instructs us to the procedural history of James's case:

> In October 2007, the State charged James with conspiracy to commit dealing in cocaine as a Class B felony, dealing in cocaine as a Class A felony, possession of cocaine as a Class A felony, and obstruction of justice as a Class D felony. James was informed of his trial date in person and ordered to appear. His attorney sent him a letter confirming the trial date and later spoke with him before trial to verify the date. James failed to appear the first day of his trial, and even after

communicating with his attorney, failed to appear the remainder of the trial.

*James v. State*, 79A02-1007-CR-830 *1 (Ind. Ct. App. April 26, 2011). At the conclusion of trial,

> [a] jury found James guilty *in absentia* of conspiracy to commit dealing in cocaine as a Class B felony and not guilty of the remaining charges. James failed to appear for his pre-sentence interview and was sentenced *in absentia* to a term of forty-five years of imprisonment.

*Id*.

[9] On September 21, 2011, James filed a *pro se* petition for PCR. On January 16, 2014, James, by counsel, filed an amended PCR petition, which alleged that James had received ineffective assistance from his trial counsel. The post-conviction court conducted an evidentiary hearing on James's amended PCR petition on April 25, 2014. During this hearing, James, by counsel, presented argument, evidence, and witness testimony in support of his ineffective assistance claim. On July 15, 2014, the post-conviction court issued an order denying James's request for PCR. This appeal follows.

# Discussion and Decision

[10] Post-conviction procedures do not afford the petitioner with a super-appeal. *Williams v. State*, 706 N.E.2d 149, 153 (Ind. 1999). Instead, they create a narrow remedy for subsequent collateral challenges to convictions, challenges which must be based on grounds enumerated in the post-conviction rules. *Id*.

A petitioner who has been denied post-conviction relief appeals from a negative judgment and as a result, faces a rigorous standard of review on appeal. *Dewitt v. State*, 755 N.E.2d 167, 169 (Ind. 2001); *Colliar v. State*, 715 N.E.2d 940, 942 (Ind. Ct. App. 1999), *trans. denied*.

[11] Post-conviction proceedings are civil in nature. *Stevens v. State*, 770 N.E.2d 739, 745 (Ind. 2002). Therefore, in order to prevail, a petitioner must establish his claims by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5); *Stevens*, 770 N.E.2d at 745. When appealing from the denial of a PCR petition, a petitioner must convince this court that the evidence, taken as a whole, "leads unmistakably to a conclusion opposite that reached by the post-conviction court." *Stevens*, 770 N.E.2d at 745. "It is only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion, that its decision will be disturbed as contrary to law." *Godby v. State*, 809 N.E.2d 480, 482 (Ind. Ct. App. 2004), *trans. denied*. The post-conviction court is the sole judge of the weight of the evidence and the credibility of the witnesses. *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004). We therefore accept the post-conviction court's findings of fact unless they are clearly erroneous but give no deference to its conclusions of law. *Id*.

## Whether the Post-Conviction Court Erred in Determining that James Did Not Receive Ineffective Assistance of Trial Counsel

[12] The right to effective counsel is rooted in the Sixth Amendment to the United States Constitution. *Taylor v. State*, 840 N.E.2d 324, 331 (Ind. 2006). "'The

Sixth Amendment recognizes the right to the assistance of counsel because it envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results.'" *Id*. (quoting *Strickland v. Washington*, 466 U.S. 668, 685 (1984)). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper function of the adversarial process that the trial court cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

[13] A successful claim for ineffective assistance of counsel must satisfy two components. *Reed v. State*, 866 N.E.2d 767, 769 (Ind. 2007). Under the first prong, the petitioner must establish that counsel's performance was deficient by demonstrating that counsel's representation "fell below an objective standard of reasonableness, committing errors so serious that the defendant did not have the 'counsel' guaranteed by the Sixth Amendment." *Id*. We recognize that even the finest, most experienced criminal defense attorneys may not agree on the ideal strategy or most effective way to represent a client, and therefore, under this prong, we will assume that counsel performed adequately and defer to counsel's strategic and tactical decisions. *Smith v. State*, 765 N.E.2d 578, 585 (Ind. 2002). Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective. *Id*.

[14] Under the second prong, the petitioner must show that the deficient performance resulted in prejudice. *Reed*, 866 N.E.2d at 769. Again, a petitioner may show prejudice by demonstrating that there is "a reasonable probability

(*i.e.* a probability sufficient to undermine confidence in the outcome) that, but for counsel's errors, the result of the proceeding would have been different." *Id.*

[15] A petitioner's failure to satisfy either prong will cause the ineffective assistance of counsel claim to fail. *See Williams*, 706 N.E.2d at 154. Stated differently, "the two parts of the *Strickland* test are separate inquires, a claim may be disposed of on either prong." *Grinstead v. State*, 845 N.E.2d 1027, 1031 (Ind. 2006) (citing *Williams*, 706 N.E.2d at 154). Further, courts often times prefer to address the prejudice element first since it is not the object of an ineffectiveness claim to grade counsel's performance. *Cranor v. State*, 699 N.E.2d 284, 286 (Ind. Ct. App. 1998).

[16] James challenges the post-conviction court's determination that he did not receive ineffective assistance of trial counsel. In raising this challenge, James claims that his trial counsel provided ineffective assistance by failing to object to what James claims was irrelevant and prejudicial evidence. For its part, the State argued that the post-conviction court properly denied James's PCR petition because he failed to prove that he was prejudiced by his trial counsel's allegedly deficient performance. We agree with the State.

[17] James argues that his trial counsel should have objected to the admission of State's Exhibit 15, a booking sheet from the Tippecanoe County Sheriff's Department. The State admitted this exhibit for the purpose of identifying James, who failed to appear at trial. Initially we note that James's trial counsel did object to the admission of certain information that was included in the

"Cautions" section which indicated that James was known to carry a concealed firearm and was a gang member. State's Ex. 15. After James's counsel levied this objection, the State agreed to block out this information by placing white corrective tape over the challenged information. James asserts on appeal, however, that the act of placing white corrective tape over the challenged information was insufficient to protect him from the prejudicial nature of the information because one could still read the information if the exhibit was held up to the light. James also asserts that his trial counsel should have objected to the admission of the exhibit into evidence because it contains other irrelevant and prejudicial information. Specifically, James points to the "Comments" section which he claims suggests that he has faced prior criminal charges and the "Alias" section which indicates that James has known aliases. State's Ex. 15. James's trial counsel did not object to the inclusion of either of the above-mentioned items.

[18] Upon review, we observe that while State's Exhibit 15 may contain some irrelevant and potentially prejudicial information, James has failed to prove that there is a reasonable probability that, but for his trial counsel's allegedly deficient performance, the result of the proceedings would have been different. During trial, the State provided overwhelming evidence of James's guilt. Bennett testified that James, Allen, and Simmons sold crack cocaine out of her apartment, and that James would sometimes use her to deliver the drugs in question. Bennett was familiar with James, as she had been in a romantic relationship with James for several years. Bennett also testified that James,

Allen, and Simmons had a "work phone" that they used to set up their cocaine sales. Trial Tr. p. 42. The number of this phone matched the number provided to Officer Walters.

[19] Acting in an undercover capacity, Officer Walters called the number and arranged to purchase cocaine. In doing so, Officer Walters spoke to both James and Allen. James asked Officer Walters how he knew about him, asked for Officer Walter's location and told him to call back when he was closer, asked him "how much you got," and asked him the color of his vehicle. Trial Tr. p. 61; State's Ex. 4. Bennett identified James's voice on a recording of these phone calls, a copy and transcript of which was admitted into evidence. Bennett further indicated that after receiving the phone call from Officer Walters, James handed her some cocaine and said "Here, baby, take this outside for me." Trial Tr. p. 47. Bennett then went outside and delivered .035 grams of cocaine to Officer Walters in exchange for money.

[20] James remained in Bennett's apartment while Bennett went outside to complete the sale. After receiving Bennett's consent to search the apartment, officers entered and found James, Allen, and Simmons in the living room. Officers observed that an upstairs toilet was clogged. After removing the toilet, officers recovered 53.42 grams of cocaine. Officers also recovered the cellular phone which was registered to the number that Officer Walters had called to arrange his purchase of cocaine. This evidence overwhelmingly supports the jury's conclusion that James committed Class B felony conspiracy to commit dealing in cocaine.

[21] Moreover, the fact that the jury found James not guilty of three of the charged offenses suggests that James was not prejudiced by his counsel's allegedly deficient performance. In *Wooden v. State*, 657 N.E.2d 109 (Ind. 1995), Wooden argued that his trial counsel provided ineffective assistance by failing to object to the State's motion to consolidate two "separate and distinct cases for one trial" because after hearing from the two alleged victims, the jury "would undoubtedly feel that [Wooden] was necessarily guilty of one of the crimes." 657 N.E.2d at 112 (internal record quotation omitted). The Indiana Supreme Court found that Wooden failed to prove that he was prejudiced by the allegedly ineffective assistance provided by his trial counsel. *Id*. In finding that Wooden had failed to prove that he was prejudiced by his counsel's allegedly ineffective assistance, the Indiana Supreme Court noted that the record demonstrated that the jury was able to evaluate the evidence and render an appropriate verdict as to both cases, observing that the jury acquitted Wooden on two of the three charges. *Id*.

[22] In *Cranor*, Cranor argued that his trial counsel provided ineffective assistance by repeatedly failing to object to inadmissible evidence. 699 N.E.2d at 287. Specifically, Cranor argued that, as a result of counsel's allegedly ineffective assistance, "the jury was exposed to improper character evidence or irrelevant, prejudicial testimony solely calculated to inflame the jury, thereby creating a risk that [he] would be convicted on jury passion alone." *Id*. In concluding that Cranor failed to prove that he was prejudiced by counsel's allegedly ineffective assistance, we noted that the jury acquitted Cranor of one of the two charged

offenses. *Id.* As such, even "[a]ssumming *arguendo* that the jury was exposed to inadmissible, inflammatory evidence due to Cranor's trial counsel's failure to lodge objections, it appears this evidence did not influence the jury to the extent Cranor fears since he was acquitted of one of the two charges: a result inconsistent with an impassioned jury." *Id.*

[23] In *Rentas v. State*, 519 N.E.2d 162 (Ind. Ct. App. 1988), the Indiana Court of Appeals concluded that Rentas had failed to prove that he was prejudiced by the allegedly ineffective assistance provided by his trial counsel. 519 N.E.2d at 165. Upon review, we noted that "Rentas was charged with two counts of dealing in a narcotic drug—yet, the jury acquitted him of the first count." *Id.* We concluded that "[i]f trial counsel's performance did not prejudice the jury's verdict as to count I, it could not have prejudiced the jury's verdict as to count II." *Id.*

[24] In the instant matter, James was charged with four criminal offenses. At the conclusion of the presentation of the evidence, the jury considered the evidence and acquitted James of three of the four charged offenses. We agree with the previous conclusions of both this court and the Indiana Supreme Court, that such an outcome is inconsistent with a claim that the allegedly irrelevant and potentially prejudicial evidence impacted the jury in a manner which affected the jury's ability to evaluate the evidence and render an appropriate verdict.[1]

---

[1] We disagree with James's assertion that the fact that the jury found him not guilty of three of the four charged offenses indicates that the jury doubted Bennett's credibility.

*See Wooden*, 657 N.E.2d at 112; *Cranor*, 699 N.E.2d at 287; *Rentas*, 519 N.E.2d at 165.

[25] Again, a successful claim for ineffective assistance of counsel requires a petitioner to prove both prejudice and deficient performance. In light of the overwhelming evidence of James's guilt coupled with the fact that the record indicates that the jury was able to evaluate the evidence and render an appropriate verdict, we conclude that James has failed to prove that he was prejudiced by his trial counsel's allegedly deficient performance. James, therefore, failed to meet his burden of proving his claim of ineffective assistance of counsel. *See Reed*, 866 N.E.2d at 769 (providing that a successful claim for ineffective assistance of counsel must satisfy two components, *i.e.*, deficient performance and prejudice); *Williams*, 706 N.E.2d at 154 (providing that a petitioner's failure to satisfy either prong will cause the ineffective assistance of counsel claim to fail). As such, we need not consider whether trial counsel provided deficient performance.

[26] The judgment of the post-conviction court is affirmed.

Vaidik, C.J., and Kirsch, J., concur.