# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 09 2017, 9:44 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Stephen T. Owens
Public Defender of Indiana

Vickie Yaser
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

Charlie L. Spencer, Jr.,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent.*

June 9, 2017

Court of Appeals Case No.
20A03-1612-PC-2845

Appeal from the Elkhart Superior Court

The Honorable Stephen R. Bowers, Judge

Trial Court Cause No.
20D02-1407-PC-22

**Bradford, Judge.**

# Case Summary

[1] On August 16, 2013, Appellee-Respondent the State of Indiana (the "State") charged Appellant-Petitioner Charlie L. Spencer, Jr. under Cause Number 20D02-1308-FD-884 ("Cause No. FD-884") with Class D felony auto theft. The State also charged Spencer under Cause Number 20D02-1307-FC-152 ("Cause No. FC-152") with Class C felony carrying a handgun without a license with a prior conviction within fifteen years, Class D felony pointing a firearm at another person, and Class A misdemeanor carrying a handgun without a license.

[2] Spencer subsequently pled guilty to Class D felony auto theft under Cause No. FD-884 and Class C felony carrying a handgun without a license under Cause No. FC-152. In exchange for Spencer's guilty plea, the State agreed to dismiss the remaining charges filed under Cause No. FC-152. The trial court accepted Spencer's guilty plea and sentenced him to an aggregate term of eight years. Spencer did not challenge his sentence on direct appeal.

[3] Spencer subsequently filed a petition seeking post-conviction relief ("PCR"), arguing that he suffered ineffective assistance of trial counsel. Following an evidentiary hearing on Spencer's petition, the post-conviction court determined that Spencer had failed to establish that he suffered ineffective assistance of trial counsel. Spencer challenges this determination on appeal. Concluding that Spencer has failed to prove that he suffered ineffective assistance of trial counsel, we affirm.

# Facts and Procedural History

[4]  In 2008, Spencer was convicted of felony possession of a controlled substance in Cook County, Illinois. On June 17, 2013, Spencer knowingly possessed a handgun for which he did not have a license. On June 28, 2013, Spencer knowingly exerted control over a vehicle belonging to Gary Edwards. At the time, Spencer knew that he did not have permission to control the vehicle and intended to deprive Edwards of use of the vehicle.

[5]  On August 16, 2013, the State charged Spencer under Cause No. FD-884 with Class D felony auto theft. The State also charged Spencer under Cause No. FC-152 with Class C felony carrying a handgun without a license with a prior conviction within fifteen years, Class D felony pointing a firearm at another person, and Class A misdemeanor carrying a handgun without a license.

[6]  Spencer subsequently pled guilty to Class D felony auto theft under Cause No. FD-884 and Class C felony carrying a handgun without a license under Cause No. FC-152. In exchange for Spencer's guilty plea, the parties agreed that the executed portion of Spencer's sentence would not exceed eight years. The State also agreed to dismiss the remaining charges filed under Cause No. FC-152. The State further agreed that unrelated charges filed under a different cause number would be dismissed.

[7]  During the guilty plea hearing, the trial court engaged in the following exchange with Spencer regarding his mental capacity:

THE COURT: Sir have you ever been treated for any mental illness or do you now suffer from a mental or emotional disability?

DEFENDANT: Yes sir.

THE COURT: Uh, tell me more about that.

DEFENDANT: Uh, I was – I was in learning disability class all my life.

THE COURT: Other than those learning disabilities do you suffer from any uh, mental illness or any condition that would affect your ability to understand what we're doing today in court?

DEFENDANT: Yes sir.

THE COURT: What is that?

DEFENDANT: Uh, I don't understand a lot of stuff.

THE COURT: Okay. Have you ever been diagnosed with a mental illness?

DEFENDANT: Yes.

THE COURT: What was that diagnosis, if you know?

DEFENDANT: Uh, I don't remember sir.

THE COURT: Did you receive treatment for that diagnosis?

DEFENDANT:  Uh, I was in – I was in Hargrove[1] in Chicago.

THE COURT:  Okay.  As you sit here today is your mind clear?

DEFENDANT:  No sir.

THE COURT:  Okay.  What seems to be the problem today?

DEFENDANT:  I don't – I don't understand a lot of this.

THE COURT: Well it's very important that you understand what we are doing today.  I'm going to go forward but it's very important that any time you do not understand something that I tell you that you let me know or that you stop me and give you – I'll give you the opportunity to speak with [trial counsel] to make sure that you do understand what you are doing today.

DEFENDANT:  Yes sir.

THE COURT:  Can you do that for me?

DEFENDANT:  Yes sir.

THE COURT:  Are you now under the influence of alcohol or any drugs that would affect your understanding of these proceedings?

DEFENDANT:  No sir.

THE COURT:  Are you taking any medication of any kind?

DEFENDANT:  No sir.

---

[1]  While Spencer reported that he was treated at "Hargrove" it appears that the hospital is actually called "Hartgrove Behavioral Health System."  *See* hartgrovehospital.com (last visited May 24, 2017).

THE COURT:  Are you suppose [sic] to be taking any medication of any kind?

DEFENDANT:  Yes sir.

THE COURT:  What medication are you supposed to be taking, if you know?

DEFENDANT:  I forgot it.

THE COURT:  Okay.  Before the Court can accept your plea of guilty I've got to be satisfied that you fully understand your Constitutional rights, that your plea of guilty has been made freely and voluntarily and that you are in fact guilty of the offense that you are pleading guilty to.

I'll need to ask you some questions and take testimony.  If at any time you do not understand the words I use or the questions I ask will you stop me immediately and let me know that?

DEFENDANT:  Yes sir.

THE COURT: I also want you to understand you may speak with [trial counsel] at any time during this process and before answering any of my questions.  Are we clear so far?

DEFENDANT:  Yes sir.

Exhibits Vol. 3 Amd., pp. 10-12.

[8]     On November 12, 2013, the trial court accepted Spencer's guilty plea and conducted a sentencing hearing.  During this hearing, Spencer's counsel made the following statement regarding Spencer's mental capacity:

It would be the easiest thing and perhaps the most convenient thing to simply sentence him to the Department of Corrections and incapacitate him for as long as possible, but I fear in doing so that would simply be to put a band-aid on a situation that can be healed.

Mr. Spencer is at an age where he's still impressionable. Uhm, he, as the Court can see from the PSI, has not had much in the way of a formal education. He's made it through 10th grade, has never acquired his GED. I believe he does have some mental health difficulties. He has some difficulty in understanding. Uhm, but he's a person who is certainly capable of being more than he has been up to this point.

Exhibits Vol. 3 Amd., pp. 31-32. The parties also discussed Spencer's Pre-Sentence Investigation Report ("PSI"), which indicated that Spencer "received mental health treatment for five months in 2007 at Hargrove [sic] Hospital in Zion, Illinois. He stated, 'They just said I had problems. My auntie took me there because she said I was trying to hurt myself.'" Exhibits Vol. 4 Confidential, p. 14. At the conclusion of the sentencing hearing, the trial court sentenced Spencer to an aggregate term of eight years. Spencer did not challenge his sentence on direct appeal.

[9] On July 9, 2014, Spencer filed a *pro-se* PCR petition. Spencer, by counsel, filed an amended PCR petition on October 13, 2015. In this amended petition, Spencer claimed that he received ineffective assistance from his trial counsel. On November 28, 2016, the post-conviction court issued an order denying Spencer's petition. This appeal follows.

# Discussion and Decision

[10]     Post-conviction procedures do not afford the petitioner with a super-appeal. *Williams v. State*, 706 N.E.2d 149, 153 (Ind. 1999). Instead, they create a narrow remedy for subsequent collateral challenges to convictions, challenges which must be based on grounds enumerated in the post-conviction rules. *Id*. A petitioner who has been denied post-conviction relief appeals from a negative judgment and as a result, faces a rigorous standard of review on appeal. *Dewitt v. State*, 755 N.E.2d 167, 169 (Ind. 2001); *Colliar v. State*, 715 N.E.2d 940, 942 (Ind. Ct. App. 1999), *trans. denied*.

[11]     Post-conviction proceedings are civil in nature. *Stevens v. State*, 770 N.E.2d 739, 745 (Ind. 2002). Therefore, in order to prevail, a petitioner must establish his claims by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5); *Stevens*, 770 N.E.2d at 745. When appealing from the denial of a PCR petition, a petitioner must convince this court that the evidence, taken as a whole, "leads unmistakably to a conclusion opposite that reached by the post-conviction court." *Stevens*, 770 N.E.2d at 745. "It is only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion, that its decision will be disturbed as contrary to law." *Godby v. State*, 809 N.E.2d 480, 482 (Ind. Ct. App. 2004), *trans. denied*. The post-conviction court is the sole judge of the weight of the evidence and the credibility of the witnesses. *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004). We therefore accept the post-conviction court's findings of fact unless they are clearly erroneous but give no deference to its conclusions of law. *Id*.

# Ineffective Assistance of Counsel

[12]     The right to effective counsel is rooted in the Sixth Amendment to the United States Constitution. *Taylor v. State*, 840 N.E.2d 324, 331 (Ind. 2006). "'The Sixth Amendment recognizes the right to the assistance of counsel because it envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results.'" *Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 685 (1984)). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper function of the adversarial process that the trial court cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

[13]     A successful claim for ineffective assistance of counsel must satisfy two components. *Reed v. State*, 866 N.E.2d 767, 769 (Ind. 2007). Under the first prong, the petitioner must establish that counsel's performance was deficient by demonstrating that counsel's representation "fell below an objective standard of reasonableness, committing errors so serious that the defendant did not have the 'counsel' guaranteed by the Sixth Amendment." *Id.* We recognize that even the finest, most experienced criminal defense attorneys may not agree on the ideal strategy or most effective way to represent a client, and therefore, under this prong, we will assume that counsel performed adequately and defer to counsel's strategic and tactical decisions. *Smith v. State*, 765 N.E.2d 578, 585 (Ind. 2002). Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective. *Id.*

[14] Under the second prong, the petitioner must show that the deficient performance resulted in prejudice. *Reed*, 866 N.E.2d at 769. Again, a petitioner may show prejudice by demonstrating that there is "a reasonable probability (*i.e.* a probability sufficient to undermine confidence in the outcome) that, but for counsel's errors, the result of the proceeding would have been different." *Id*. A petitioner's failure to satisfy either prong will cause the ineffective assistance of counsel claim to fail. *See Williams*, 706 N.E.2d at 154. Stated differently, "[a]lthough the two parts of the *Strickland* test are separate inquires, a claim may be disposed of on either prong." *Grinstead v. State*, 845 N.E.2d 1027, 1031 (Ind. 2006) (citing *Williams*, 706 N.E.2d at 154).

[15] Spencer contends that his trial counsel provided ineffective assistance by failing to present available mitigating evidence at sentencing. Specifically, Spencer argues that his trial counsel

> did nothing to obtain evidence of Spencer's educational or psychological background. Records that would have been available in 2013 show that Spencer has a low IQ, and was diagnosed as mildly mentally retarded and severely deficient in primary care, legal, social and educational skills. Testimony and/or letters that would have been available in 2013 would have informed the court of Spencer's premature birth to a drug-addicted mother. Information available in a widely circulated newspaper and a commonly relied upon psychiatric manual would have advised the court of the consequences of Spencer's history and intellectual disability. Spencer's criminal behaviors could have been contextualized.
>
> Counsel's lack of preparation and superficial speech at sentencing deprived the court of facts that would have provided insight into

conditions that contributed to Spencer's criminal behavior and warranted a less severe punishment.

Appellant's Br. pp. 20-21. Spencer further argues that his trial counsel's presentation "gave the [trial] court only vague ideas about Spencer's life and characteristics, certainly not 'the fullest information possible' as was his duty[.]" Appellant's Br. p. 22. For its part, the State contends that Spencer's trial counsel, which did present some evidence relating to Spencer's limited mental capacity, did not provide ineffective assistance.

[16] Spencer claims that the trial court's concern with his criminal history was based on a lack of information because the trial court "through no fault of its own, did not know that Spencer's abilities to reason, plan and learn from experience were compromised by his low intellect" and that his mental capacity makes him "more vulnerable to acting impulsively and without regard for consequences." Appellant's Br. pp. 24, 25. Spencer also claims that it was irrelevant that he was not incompetent at the time he committed the crimes at issue but argues that although not incompetent, his mental capacity should have been found at sentencing to signal a lesser culpability. Thus, Spencer alleges that his trial counsel's failure to provide more detailed information relating to his mental capacities resulted in deficient performance and that he was prejudiced by said deficient performance.

[17] In denying Spencer's PCR petition, the post-conviction court made the following factual findings:

11.   The Petitioner argues that trial counsel failed to properly investigate his mental health history and to recognize, investigate and argue the impact of the Petitioner's level of intellectual functioning.  The testimony at the hearing is undisputed that the Petitioner is mildly mentally retarded with an IQ of 70.  It appears from the Presentence Investigation Report that the Petitioner completed 10th grade at Marshall High School in Zion, Illinois.  The Presentence Investigation Report also disclosed that the Petitioner received mental health treatment for five (5) months in 2007 at Hargrove [sic] Hospital in Zion, Illinois.

12.   The unrebutted testimony at the hearing further indicates the Petitioner participated in special education classes.  The guilty plea transcript reflects that the Court was aware of the Petitioner's difficulties with reading and writing, and that he had not graduated from high school.

13.   The Petitioner's mother testified that she attempted to contact trial counsel.  Trial counsel was unable to testify based upon his limited notes and even more limited recollection, whether he had ever made contact with the Petitioner's family. Trial counsel did not seek to obtain either mental health records or educational records with respect to the Petitioner.

14.   Trial counsel did not seek a full sentencing hearing and did not call any witnesses on behalf of the Petitioner at sentencing. The Court notes that full sentencing hearings are rarely requested by attorneys in similar cases in Elkhart Superior Court 2.

15.   Trial counsel testified that he saw no reason to seek a competency determination with respect to the Petitioner. Nothing in the record suggests that a competency evaluation was called for in this case.

16.   The plea agreement in this case, which the Court reluctantly accepted, limited the executed sentence at the time of the original

sentencing to no more than eight (8) years. Had the Petitioner been sentenced on all pending charges and been given the maximum sentence for each he faced a maximum exposure of seventeen (17) years at the Indiana Department of Correction.

17. With respect to the two felonies covered by the plea agreement the Petitioner's total exposure was to eleven (11) years at the Indiana Department of Correction.

18. The Petitioner received less than the maximum sentence on both charges. Six (6) years rather than the maximum of eight (8) years on the handgun offense and two (2) years rather than three (3) years on the auto theft offense.

19. Trial counsel argued that the Petitioner should be given a lesser sentence due to his limited education and history of having been hospitalized approximately six years before the commission of the offenses for which he was being sentence.

20. The sentencing transcript reflects that the Court was particularly bothered by the extent of the Petitioner's criminal record. That record included a felony for which the Petitioner had been sent to prison in Illinois, seven misdemeanors (including a battery) and a number of violations of probation. The record also reflects that that Petitioner not only possessed the handgun but also produced the handgun and pointed it at someone. The presentence investigation also reflected a number of encounters with the criminal justice system in Cook County, Illinois, for which complete information about the disposition of the offense was not available.

Appellant's App. Vol. II, pp. 62-63.[2]  Based on these findings, the post-

conviction court concluded as follows:

> 4.  The medical records and other materials submitted by
> Petitioner give a more complete picture of the Petitioner's
> limitations than the argument made by trial counsel at the time of
> sentencing.  But nothing in those records contradicts the concerns
> addressed by the court in finding aggravating and mitigating
> circumstances.  It is obvious from the record that the court's chief
> concern was the Petitioner's criminal record, particularly the fact
> that the defendant had a history of violations of probation, and
> the fact that he committed one of the offenses for which he was
> being sentenced while on bond for the other.  Moreover, the
> treatment records and other information presented at the hearing
> on the petition for post conviction relief do not even remotely
> suggest that the Petitioner was incompetent at the time of the
> subject offenses or at the time of sentencing.  Neither do those
> records address Petitioner's practical level of functioning.
>
> 5.  The sentencing hearing transcript also reveals that the court
> was open to a modification of the Petitioner's sentence to a
> community corrections placement if he demonstrated good
> behavior in the Department of Correction and took advantage of
> educational opportunities during his incarceration.
>
> 6.  The performance of counsel must be evaluated based upon the
> circumstances at the time of the representation, not with the
> benefit of hindsight.  The efforts of trial counsel resulted in a

---

[2]  We note that in challenging the denial of his PCR petition, Spencer inaccurately claims that the post-conviction court found that the sentence imposed by the trial court was less than that sought by the State.  Review of the post-conviction court's findings, however, reflects that contrary to Spencer's claim, the post-conviction court found that the sentence imposed was less than Spencer's maximum potential exposure had his guilty plea not limited the sentence to eight years, not that the eight-year sentence was less than that requested by the State.

sentence within normal limits, and less than the sentence sought by the State. There is no evidence of prejudice to the Petitioner. Nor is there any evidence before the Court as to the prevailing norm for performance by counsel handling a case involving Class D and Class C felony charges. Given the limited exposure under the terms of the plea agreement and counsel's familiarity with the attitude of the Court, there is no objective basis for concluding that counsel should have obtained additional mental health or educational records before sentencing. Although better communication with Petitioner's family would have constituted better representation, that is not the same as saying that trial counsel's performance was inadequate. The Petitioner simply has not met his burden of proof, even as to the "deficient performance" prong of his argument, let alone the "prejudice" prong.

Appellant's App. Vol. II, pp. 65-66.

[18] Upon review of the record presented on appeal, we agree with the post-conviction court's conclusion that while the evidence presented during the post-conviction proceedings relating to Spencer's mental capacity provided a more detailed look at Spencer's mental capacity, the evidence was consistent with the evidence presented to the trial court during the guilty plea and sentencing hearings. The trial court was made aware of the fact that Spencer (1) suffered from a learning disability, (2) had previously been hospitalized and treated for mental illness, and (3) continued to suffer certain cognitive limitations as evidence by his struggle to understand "a lot of stuff." Ex. Vol. 3 Amd., p. 10. We also agree with the post-conviction court's conclusion that even if trial counsel had offered the additional evidence which Spencer now claims should have been presented during the sentencing hearing, such evidence would not

likely have affected the sentence imposed by the trial court as it did not support a determination that Spencer was incompetent or suffering from mental illness at the time he committed the offenses at issue. As such, like the post-conviction court, we conclude that Spencer has failed to prove that he was prejudiced by trial counsel's allegedly deficient performance. Spencer, therefore, has failed to meet his burden of proof on appeal as he has failed to convince us that the evidence, taken as a whole, "leads unmistakably to a conclusion opposite that reached by the post-conviction court." *Stevens*, 770 N.E.2d at 745.

[19] The judgment of the post-conviction court is affirmed.

Najam, J., and Riley, J., concur.